R. H. HELTON AND JENNIE HELTON, HIS WIFE, *Appellants,*
v. J. C. SINCLAIR, *Appellee.*

Division A.

Opinion Filed June 11, 1927.

1. Where the vendor of personal property holds a conditional sales contract with the vendee in which the owner reserves the title to the personal property sold and retains the right upon the failure of the vendee to make the stipulated payments to retake possession of the property the vendor cannot after exercising his rights to retake the property continue the pursuit of the purchaser on the debt. He cannot have both the remedy of retaking possession of his property and a suit to enforce the debt for the purchase price.

2. Where the vendor of personal property holds a conditional sales contract with the vendee in which the vendor reserves the title to the property and retains the right upon the failure of the vendee to make the stipulated payments to retake possession of the property and such contract also consists in part of a mortgage upon lands to secure the purchase price of the personal property sold, the vendor abandons his right to the fruits of a foreclosure of the lien upon the land already begun by him on the contract when without authority of law or sanction of court procedure he retakes possession of the personal property sold.

An Appeal from the Circuit Court for Hardee County; George W. Whitehurst, Judge.

Decree reversed.

*John B. Singletary,* for Appellants;

*W. W. Whitehurst,* for Appellee.

ELLIS, C. J.—J. C. Sinclair, the appellee, exhibited his bill in chancery against R. H. Helton and his wife to en-

force a mortgage lien upon certain live stock and certain described lands. The bill alleges that the defendant owed the complainant twenty-three hundred dollars evidenced by a promissory note, the due date of which was May 1, 1920; that the defendants executed and delivered to the complainant a mortgage upon the live stock and lands to secure the payment of the debt. The note and mortgage were attached to the bill as "Exhibit A" and made a part of it. It was alleged that the debt was not paid at maturity; that the defendants were insolvent and that the live stock was not receiving proper treatment and upon information and belief complainant alleged that the live stock in "not being properly cared for said live stock are depreciating in value."

The bill prayed for a foreclosure of the mortgage and the appointment of a receiver to take charge of the personal property.

The note and mortgage referred to in the bill consists of one document. It is a promise to pay twenty-three hundred dollars on May 10, 1920. The document recites that the note was given for the purchase price of certain live stock, particularly described, the title to which was reserved by Sinclair until the purchase price therefor, together with interest, should be paid in full according to the "legal tenor and effect of this obligation."

The document then recites that:

"to secure the payment of said sum of money promptly when due as aforesaid, I hereby bargain, sell, grant and convey unto the said SINCLAIR, his heirs and assigns forever, the above described property;

"Also the following lands situated in DeSoto County, Florida, to-wit:"

Then follows a description of lands according to governmental survey. There were clauses which contained a

promise to pay the debt when due, and failure to pay it or any part "the entire amount shall become instantly due"; that in such case Sinclair should have the right to "retake wheresoever it may be found, the said property to which the said SINCLAIR reserves the title, or at his or their option to foreclose his mortgage upon all of said property to collect the amount due upon this obligation." There was also a promise to pay attorney's fees. The instrument was executed under seal by the Heltons in the presence of two witnesses and duly acknowledged before a notary public.

Helton and his wife answered the bill. They admitted the purchase of the live stock at the price alleged; that they executed the instrument described, but it was averred that the inclusion in the mortgage of the description of the personal property was not their intention; that they, defendants, could not read and they relied on the complainant's statements that the provisions of the instrument covered only the lands described upon which the mortgage was intended to be given to secure the price of the live stock. It is admitted that the debt was due and denied that the live stock were not being properly cared for. The defense was made that as the complainant had, through the appointment of a receiver, "repossessed himself" of the property or caused it to be disposed of "by and under order of the Court" the complainant could not maintain his bill to enforce the mortgage upon the land.

In behalf of Mrs. Helton the answer averred that the land was her separate statutory property; that she executed the mortgage, but that she did not do so freely and voluntarily and without fear, constraint or apprehension from her husband; nor did she execute it separately and apart from her husband.

The cause was referred to a special Master to take testi-

mony on June 19, 1923. The bill was filed June 22, 1920;
the amended answer August of the same year.

On June 22, 1920, the same date upon which the bill
was filed, the Court upon the application of the com-
plainant appointed a receiver to take possession of the
personal property. Four days later the receiver submitted
a petition to the Court in which he set out how he had
attempted to execute the Court's order and made demand
upon Helton for a delivery of the personal property and
that Helton had refused to surrender it. The receiver
asked for a mandatory order commanding Helton to deliver
possession of the property to the receiver and that Helton
be adjudged to be in contempt.

This petition was supplemented by one signed by solici-
tors for the complainant to the same end.

The Court issued an order upon the filing of such peti-
tions directed to all and singular the sheriffs of the State
of Florida commanding them to notify Helton to appear
before the Court and show cause why he should not be
punished for contempt and ordering the sheriff to take
possession of the personal property. The return, as made
by the sheriff who executed the order, is not copied in
the record; but it appears that on June 29, 1920, Martin,
the receiver, gave to J. O. Gates, sheriff of Manatee
County, an order directing him to deliver to the com-
plainant as the receiver's "agent" all or whatever part
of the stock he might have in his possession under the
order of the Court.

A final decree was made on the 2nd day of July, 1924.
The Court found that $1,664.96 was due on the debt,
$838.22 interest, and decreed the payment of that sum
together with the sum "$280.00 as attorneys' fees," making
a total of $2,583.18, and defaulting in the payment of that
sum within five days the land to be sold. No motion was

made of the personal property, nor was there any direc-
tion to apply the proceeds of the sale of the land to the
payment of the amount due.

There was no report to the Court by the receiver of
what disposition had been made of the personal property;
whether it had been sold, by whom and under whose order,
nor what had become of the proceeds of such sale, but the
testimony of Mr. Sinclair, the complainant, discloses that
$750.00 had been paid on the mortgage debt, which sum
was realized from the sale of the personal property "by
a foreclosure on the live stock described in the mortgage."
That testimony discloses that Martin, who was named as
receiver in this case, sold the property as "Special
Master." That the complainant bought it. Notice was
given of the sale by posting a notice at the court house
door. This was done within six months after the original
transaction in which the stock was purchased by Helton,
according to the testimony of Sinclair, the complainant.
As Helton bought the property on January 6, 1920, agreed
to pay on May 1, 1920, the bill to foreclose filed on June
22nd and the property delivered to Sinclair by the sheriff
upon order of Martin, the receiver, on June 29, 1920, the
sale must have taken place very soon after the delivery
of the order of Martin to the sheriff to deliver the prop-
erty to Sinclair as the "Receiver's Agent."

Now, the record discloses that as late as June 26, 1920,
Helton was in possession of the property because the peti-
tions of the receiver and attorneys for the complainant
allege that he refused to surrender possession of it to the
receiver, who, when the Court by its order directed the
sheriff to take it, ordered the sheriff on June 29, 1920, to
deliver it to Sinclair. If the Master's sale was made under
foreclosure proceedings and Sinclair became the purchaser,
"nearly six months" after he had sold the property to

Mr. and Mrs. Helton there was little time for foreclosure proceedings, decrees of sale, advertisements of sale, reports by the Master and application of proceeds by order of Court to the debt.

This kind of conduct is a too literal application of the supposed motive behind the so-called demand for simplified court procedure. It was simple enough, but not quite fair enough to satisfy a court of conscience.

What happened in this case, so far as the record disclosed, is that under pretense of court procedure the plaintiff repossessed himself of the personal property which he sold to the Heltons, held a pretended public sale of his own model, sold the property to himself at less than 33 per cent of the original sales price to the Heltons and now seeks to sell their home to pay the alleged balance due which exceeds the original debt by upwards of two hundred and eighty dollars.

It is that kind of equity administered in the name and authority of court procedure which obscures the element of conscience on which rests the reason for the existence of courts by that name.

There is no doctrine more thoroughly established in this State than that when one holds a conditional sales contract in which he reserves the title to the personal property sold and retains the right, upon the failure of the vendee to make the stipulated payments, to retake possession of the property, cannot after exercising his right to retake the property continue the pursuit of the purchaser on the debt. He cannot be both owner of the property sold and creditor of the vendee for the amount of the purchase price. He cannot have both the remedy of retaking possession of his property and suit to enforce the debt for the purchase price. See Malone v. Meres, — Fla. — 109 S. R. 677; American Process Co. v. Florida

White Pressed Brick Co., 56 Fla. 116, 47 South. Rep. 942, 16 Ann. Cas. 1054.

It is true that when Sinclair began his suit to foreclose the mortgage in the Circuit Court for Hardee County he elected to take that remedy, instead of the alternative secured by his contract to retake possession of the property sold on default in the payment of the purchase price. But he did not abide his election of remedies. Without any semblance of orderly court procedure he contrives to take possession of the property through the complaisance of the court officer and thus secured, or attempted to do so, the benefits of both remedies by the simple process of using the name of the court to that end.

This condition alone would not permit the entry of the decree which was made in this case, but aside from this there was not a sufficient showing in the first case for the making of an order by the court appointing a receiver to take possession of the property. Thereafter every step taken in connection with it was, so far as the record disclosed, without authority of law, illegal and to the injury of the defendants.

The decree is reversed with directions to dismiss the bill of complaint.

It is so ordered.

STRUM AND BROWN, J. J. Concur.

WHITFIELD, P. J., AND TERRELL AND BUFORD, J. J. concur in the opinion.