T. B. C. VOGES, trading and doing business under the firm name and style of VOGES MOTOR COMPANY, *Appellant*, v. NELSON E. WARD, *Appellee*.

Division A.

Opinion filed July 31, 1929.

306

*Snedigar, Miller, McKay & Baya* and *Marks, Marks & Holt,* for Plaintiff in Error;

*Price, Price, Neeley & Kehoe,* for Defendant in Error.

Brown, J.—The writ of error in this case brings up for review from the Circuit Court of Dade County a judgment in favor of defendant in an action of replevin.

The plaintiff, T. B. C. Voges, doing business as Voges Motor Co., sold and delivered a Bethlehem motor truck to the defendant, Nelson E. Ward, for $3,936.64, $1,000.00 of which was paid in cash, the balance being payable in twelve monthly installments of $244.72 each evidenced by twelve promissory notes. There was a written contract between the parties, entitled a ''conditional sale agreement,'' which recited the sale, the price and the execution of the notes above mentioned, and which provided that the title to said car should remain in the seller until all of said notes and interest, together with costs of collection ''and any judgment which might be rendered upon said notes or any of them,'' shall have been paid, and that ''no assignment, negotiation or extension of said notes or any of them shall in any way be construed as a waiver of these conditions.''

In the contract, the purchaser also agreed to keep the car insured against fire, theft and collision, for the benefit, in the case of loss or damage, first of the seller, then of the purchaser, as their interests might appear.

The remainder of the contract reads as follows:

''Upon any default in the payment of the principal or interest of any of said notes, or upon the breach of any of the conditions and covenants herein, or if at any time the credit status of Purchaser should so change as to render his continued possession of the Car unsafe for Seller or assigns, then any holder of the unmatured notes and contract may at his option declare all of the said notes immediately due and payable, and the same shall thereupon become immediately

due and payable. The Seller may at his option, by collection, suit or otherwise, enforce payment of said notes, but no suits or legal proceedings with respect thereto shall be deemed any waiver of the right of Seller to take possession of the car on default or breach as herein set forth.''

"Upon any default in payment, or upon breach of any condition or covenant herein made by the Purchaser, or if the Seller or assigns shall deem the security for the payment of said notes intended to be afforded hereby insufficient or unsafe, the Purchaser shall, on demand by the Seller, or assigns, forthwith deliver the Car in as good condition as when received by Purchaser, ordinary wear and tear excepted, and should Purchaser fail or refuse on such demand to deliver the Car as aforesaid, the Purchaser agrees that the *bona fide* holder of the notes and contract shall have the right, without any further notice or demand, forthwith to take possession of the Car, wherever found, and for such purpose licenses and authorizes the entry of any premises of the Purchaser, with or without force or process of law, and, at the option of the *bona fide* holder of the notes and contract all payments made by Purchaser with respect to the indebtedness represented by the notes herein may be retained as liquidated damages for the nonfulfilment or breach of performance of this agreement, for loss in value with respect to the Car, and for the rental value thereof, or, the Car may be sold at public or private sale at any time thereafter, with or without notice to the Purchaser, unless otherwise provided by law, and the Seller or assigns have the right to become the purchaser of said motor vehicle at any sale thereof, and if upon such sale the proceeds thereof are insufficient

to pay the sums remaining unpaid with respect to said notes with interest and the expenses caused by such repossession, including expense incurred in locating the Car, premium on judicial bond, attorneys' fees, repairs, storage, liens and expense of sale, any deficiency shall be paid by, and any overplus shall be paid to, the Purchaser. The terms hereof shall be binding upon and enure to the benefit of the heirs, executors, administrators, successors and assigns of the parties hereto.''

This contract was filed and recorded in the office of the clerk of the Circuit Court.

The notes were all in the same form. The one first falling due reads as follows:

$244.72 (Town and State) Miami, Fla. Date March 4, 1924

FOR VALUE RECEIVED, on or before April 4, 1924, the undersigned promises to pay to the order of VOGES MOTOR CO. Two Hundred Forty Four & 72/100 Dollars ($244.72) at The First National Bank

This note is one of a series of 12 notes referred to in Conditional Sales Agreement, Chattel Mortgage, or lease Agreement dated March 4, 1924 executed by the maker hereof covering BETH-LEHEM Motor Vehicle No. G. N. 25097

(Indicate above, make and number)

City of MIAMI, State of Fla. in New York Exchange.

NELSON E. WARD
P. O. Box 1925

ADDRESS:
LEMON CITY, FLA.

The following appears on the back thereof:
''Presentment, demand, protest, and all notices in connection therewith waived''

Nineteen days after default in the payment of the first note, Voges brought this replevin suit, made bond in the sum of $6,000.00 and secured possession of the truck.

The first trial of the case resulted in a verdict for the plaintiff, which on motion was set aside, and a new trial granted. The second trial was had about two years after the suit was brought, and upon an instructed verdict judgment was rendered in favor of the defendant, by which the defendant recovered against the plaintiff the value of the truck, $3,000.00, and damages for the detention thereof to the amount of $10,560.00.

Upon the last trial the evidence developed that shortly after the execution of the contract and notes, the plaintiff endorsed all of the notes in blank and delivered them for a valuable consideration to the Bethlehem Motors Corporation, which negotiated them with Farmer & Ochs Company. Plaintiff, however, retained possession of the contract. The defendant defaulted in the payment of the first note, and a few days later the plaintiff paid this note, and about a week later brought this suit. While the evidence was not entirely clear on the point, it afforded a fair inference that the first note had been returned to plaintiff and was in his possession when the suit was brought. After suit was begun, defendant defaulted in the payment of the remaining notes, all of which were paid and taken up by the plaintiff, and all the notes were offered in evidence by plaintiff on the trial. They bore the endorsement of the plaintiff, the Bethlehem Motors Corporation and Farmer & Ochs Company. The defendant objected to the admission of all of the notes on numerous grounds. The court admitted in evidence the first note, which had been paid by plaintiff before filing suit, but excluded the others. The court stated that the suit had been prematurely brought, and on motion instructed

a verdict in favor of the defendant for the value of the property at the time of the institution of the suit, $3,-000.00, and $110.00 per week as the damages sustained by the defendant by reason of its unlawful detention. Pretermitting at this time the question as to whether the defendant was entitled to a verdict at all, and if so, whether he was entitled to one upon the basis instructed by the court, there was evidence by the plaintiff as to the value of the property being $3,000.00, and its rental value even more than sufficient to sustain the surprising amount instructed and allowed by the verdict. Motion for new trial was denied. To the judgment rendered on this verdict for the total sum of $13,560.00, plaintiff took this writ of error.

The first question that presents itself is whether the notes given by the defendant to the plaintiff were unconditional, negotiable promissory notes. The form of each note used, that is, the body of the note, is an unconditional promise to pay to the order of a named payee a definite sum of money at a determinable future date, and complies with all the requirements necessary to negotiability as prescribed by the negotiable instruments law. See Section 6761, Comp. Gen. Laws. But it is contended that the notation in the lower left hand corner, above set forth, rendered the notes non-negotiable. Yet this notation is but a statement of the transaction which gives rise to the instrument. Section 6763 Comp. Gen. Laws, provides that: "An unqualified order or promise to pay is unconditional within the meaning of this chapter, though coupled with: (1) An indication of a particular fund out of which reimbursement is to be made, or a particular account to be debited with the amount; or, (2) A statement of the transaction which gives rise to the instrument. But an order

or promise to pay out of a particular fund is not unconditional."

The notes here involved are entirely different from the note held negotiable in Mason v. Flowers, 107 So. R. 334, 91 Fla. 224. The notation in the corner of each note does not indicate that the notes are in any way conditioned or controlled, or their negotiability impaired by the contract; it merely states that the note is one of a series of notes "referred to" in a certain contract bearing the same date and covering a designated motor vehicle. The terms or nature of the contract are not stated. It is merely mentioned as a "conditional sale agreement, chattel mortgage, or lease agreement." The notation being in the alternative, a purchaser of the note had as much ground to presume that the transaction which gave rise to the instrument was a mortgage, or a lease, as that it was a conditional sale contract. The note itself being unconditional, and the presumption, when in the hands of a *bona fide* purchaser for value in due course and before maturity, being in favor of its negotiability, we do not think the notation in the lower left hand corner of these notes was sufficient to render them non-negotiable.

The well-settled general rule is that the reference in a bill or note to some extrinsic agreement, in order to destroy its negotiability, must be such as indicates that the paper is to be burdened with the conditions of that agreement. Where, therefore, the reference is simply a recital of the consideration for which the paper was given, or is merely a reference to the origin of the transaction, its negotiability is not affected thereby. But where a bill or note contains a reference to some extrinsic contract in such a way as to make the bill or note subject to the terms of that contract, the negotiability of the paper is destroyed. 3 R. C. L. 918; 8 C. J. 120; Utah Lake Irrigation Co. v.

Allen, 231 Pac. R. 818, 37 A. L. R. 651, and note p. 655; Commercial Nat'l Bank v. Burch, (Ill.), 31 N. E. R. 420, 33 A. S. R. 331; Strand Amusement Co. v. Fox, (Ala.), 87 So. R. 332, 14 A. L. R. 1121, and note on pages 1126-1133. In the cited Alabama case, it was held that the words "as per contract," written in the lower left hand corner of a note, did not destroy its negotiability. See also Taylor v. Am. National Bank, 63 Fla. 631, 57 So. R. 678, and Chicago Ry. Equipment Co. v. Merchant's Nat'l Bank, 136 U. S. 268, 34 Law Ed. 349, which have some bearing on the above question. It has been said that a negotiable instrument is "a courier without luggage, whose countenance is its passport." There is no "luggage" in the body of these notes, or anything "on their countenances" (if this figurative language be broad enough to cover the notations on their faces) to show that they are burdened with luggage located elsewhere. The principles stated in the case of Sumter County State Bank, 68 Fla. 473, 67 So. R. 169, and 3 R. C. L. 1066, cited by appellant, are good law, but are not in point just here.

The next question to be considered is whether the contract between the parties is a conditional sale contract or a chattel mortgage.

Section 5724, Comp. Gen. Laws, provides that "all deeds of conveyance, obligations conditioned or defeasible, bills of sale or other instruments of writing conveying or selling property, either real or personal, for the purpose or with the intention of securing the payment of money, * * * shall be deemed and held mortgages, and shall be subject to the same rules of foreclosure and to the same regulations, restraints and forms as are prescribed in relation to mortgages."

In Cary & Co. v. Hyer, 107 So. R. 684, 91 Fla. 322, this court, speaking through Mr. Justice STRUM, said: "A car-

dinal rule in the construction of ambiguous contracts is that the intention of the parties, when ascertained, will govern. (Citing authorities.) Where parties intend a conditional sale rather than a mortgage, that intention will be given effect. Smith v. Hope, 35 So. R. 865, 47 Fla. 295. But in view of the provisions of our statute, even if it were not so independently thereof, neither artifice nor form, nor superficial declaration of intention will successfully obscure the true nature of the transaction. That purpose and intention is therefore to be ascertained, not alone from the form of the instrument which evidences the transaction, but principally from the conduct of the parties and a fair consideration of the entire transaction as disclosed by the underlying facts and circumstances. An important if not a controlling guide in determining the intention of the parties is the purpose sought to be accomplished by them. Purpose is usually an unerring indication of intention." It was also said in the opinion in that case that the principles applicable in determining whether an instrument is or is not a mortgage will obtain in courts of law as well as in courts of equity, and are applicable alike to both real and personal property.

There are certain features of the transaction here under consideration which distinguish it from the ordinary conditional sale.

While the contract contains a retention of title clause, this itself is unusual, in that it purports to retain the title in the seller not only until the notes evidencing the debt are paid, but also until any judgment which may be rendered on said notes is paid, whereas the general rule is that when the seller elects to sue for the recovery of the debt, he thereby affirms the sale, thus waiving his rights to repossess the property, and the title to the property vests absolutely in the buyer. Estrick on Installment

Sales, Section 317, citing numerous cases; American Process Co. v. Fla. White Pressed Brick Co., 56 Fla. 116, 47 So. R. 942, 16 Ann. Cases 1054; Helton v. Sinclair, 113 So. R. 568, 93 Fla. 112.

The purpose of the contract to make the debt absolute and binding upon the purchaser in any event, if the seller so wills it, is further shown by the provision that upon default the holder of the contract and notes may retake the property and retain all payments made as liquidated damages, or he may sell the property at public or private sale and apply the proceeds to the balance due on the notes, and if there be a surplus, turn it over to the purchaser, and if there be a deficiency the purchaser shall be liable for it. Thus, under the contract, the seller can retake the property, retaining the payments already made, then sell the property, applying the proceeds on the debt, and proceed against the purchaser for the full balance of the purchase price. The absolute character of the purchaser's debt for the purchase price is further emphasized by the seller's taking the negotiable promissory notes therefor, making it possible for the seller to dispose of such notes or any of them to a purchaser for value in due course before maturity in such a way as to prevent the purchaser from setting up, in defense of any action by a holder to enforce payment, any equities existing between the original parties of which the holder had no knowledge when he acquired the paper; thus making the purchaser absolutely liable for the debt though meanwhile the seller may have repossessed the property purchased. In the case of a mortgage it is quite generally held that the mortgagee may ordinarily foreclose his mortgage in equity and also sue at law to recover the debt, and he may pursue these remedies concurrently to secure satisfaction of the entire debt, though he is entitled to but one satisfaction. Jones' Chattel Mort-

gages, Section 758, 5th Ed.; 41 C. J. 654 et seq. But such is not the case as regards a true conditional sale. In Jones on Chattel Mortgages, p. 46, it is said:

"The optional payment of the purchase price is as essential to constitute a transaction a conditional sale, as the conditional passing of the title. Hence a transaction that in express terms imposes an unconditional liability upon the vendee to pay the purchase price for the property delivered, however characterized by the parties, is essentially and in legal effect an absolute and not a conditional sale. If the purchaser becomes liable unconditionally for the purchase price, although by the agreement he may never get the title and ownership of the property, then the agreement is an evasion of the registration statute, as its purpose is simply to retain a secret lien."

In the American Process Company case, above cited, Mr. Justice WHITFIELD, writing the opinion of the Court, said:

"Where property is sold on credit and the title thereto retained by the vendor, upon a breach of the conditions of the sale the vendor may either treat the sale as absolute and sue for the price thereof, or he may treat the sale as cancelled and recover the property; but the vendor cannot pursue both course and the election to pursue either one of two inconsistent remedies may in law operate as an abandonment or a waiver of the other. The vendor may elect between inconsistent remedies, but he may not pursue inconsistent remedies for the enforcement of his property rights.

"Where an action is brought for the price of all the goods sold it is a concession that title has passed; and the vendor may not in general also prosecute an

action for the recovery of all the same property upon the theory that the title thereto has not passed from him.''

Mr. Justice ELLIS, speaking for the Court in the recent case of Helton v. Sinclair, also above cited, said:

"There is no doctrine more thoroughly established in this State than that, when one holds a conditional sales contract in which he reserves the title to the personal property sold and retains the right, upon the failure of the vendee to make the stipulated payments, to retake possession of the property, he cannot, after exercising his right to retake the property, continue the pursuit of the purchaser on the debt. He cannot be both owner of the property sold and creditor of the vendee for the amount of the purchase price. He cannot have both the remedy of retaking possession of his property and suit to enforce the debt for the purchase price. See Malone v. Meres (Fla.), 109 So. R. 677; American Process Co. v. Florida White Pressed Brick Co., 56 Fla. 116, 47 So. R. 942, 16 Ann. Cases 1054.''

See also 6 Am. & Eng. Encyc. Law, 480; 24 R. C. L. 483.; Estrich on Installment Sales, Section 325.

The holding that in certain cases the seller may elect to treat the retention of title contract as a mere security for the debt, in the nature of a mortgage to secure the payment of the purchase price, and proceed in equity for its foreclosure, (which method gives the purchaser some advantage and protection by recognizing and protecting his equity in the property arising from the payments he has made on the purchase price), does not abrogate the doctrine laid down in the cases cited. See Varn v. Ashbrook

84 Fla. 626, 94 So. R. 384; Malone v. Meres, 91 Fla. 709, 109 So. R. 677. And in Alabama it is held that where, under a conditional sales contract, the purchaser, after having made substantial payments, defaults, he may go into equity and secure relief against the forfeiture stipulated in the contract upon the payment of the balance due. Barton v. Broyles Stove and Furniture Co., (Ala.) 103 So. R. 854. There is apparent also an advantage to the seller in treating the contract as a mortgage, as shown in the case of Malone v. Meres, *supra,* in that if upon foreclosure sale the property does not bring enough to pay the debt, the seller may move for a deficiency decree against the purchaser for the balance remaining unpaid. On the other hand, there is also a possible advantage to the purchaser in case the property sells for more than the amount due, in that he would become entitled to the surplus. It is perhaps for some such reasons as these, and others which might be mentioned, which incline the courts, in cases of doubt, to hold the transaction a mortgage rather than a conditional sale, so that the essential rights of the parties may be better protected.

There is a decided conflict among the authorities as to the effect of a transfer of the purchase money obligation upon the title reserved in a conditional contract of sale. Estrich on Installment Sales, Section 296 et seq. Some courts hold that such a transfer, especially where the debt is evidenced by negotiable paper, constitutes an election to treat the obligation as an absolute debt, and that such an election vests the title to the property in the purchaser. A well-reasoned case to this effect is Winter Motor Carriage Co. v. Broadway Automobile Co., 65 Wash. 650, 118 Pac. R. 817, 37 L. R. A. N. S. 71, and in a note to this case the authorities are reviewed. Other cases hold that a transfer of the obligation transfers the security also, and

vests the title in the transferee; while in still others it is held that such a transfer leaves the legal title in the vendor. In Mississippi it is held that such a transfer of the purchase money notes leaves the title in the vendor in trust for the indorsees and that where suits are brought by the indorsees against the purchaser, the vendor may still replevin the property, but he must apply the money realized therefrom to the payment of the debt. See McPhersen v. Acme Lumber Co., 70 Miss. 649, 12 So. R. 857; and Wells v. Crawford, 23 Cola. 103, 127 Pac. R. 914; 24 R. C. L. 479. It will be noted from the opinion in the Mississippi case, however, that it is held in that jurisdiction that the vendor in a conditional sale contract is regarded as retaining the title simply as security for the debt for the purchase price—which, under our statute would make him a mortgagee—and that where the purchase money notes are assigned, he retains the title for the benefit of and as trustee for the holders of the notes. This doctrine, that a severance of the debt from the retention of title contract does not impair either, but gives the transferees the right to sue on the notes and yet leaves the title in the vendor, so that he may replevin the property, is somewhat unique, in that it exposes the purchaser to danger of cross fire from two or more different quarters, by which he may possibly be made to lose the property and yet be forced to pay the debt. In the case of a mortgage, the assignment of the entire debt carries with it all the mortgagee's equitable interest in the mortgaged property; the effect being that the assignee takes the mortgage along with the note. And assignment of part of the mortgage debt carries with it *pro tanto* the mortgage security; and a subsequent payment of such part so transferred extinguished the mortgage as to the part so transferred leaving it operative as to the part unpaid. Jones Chattel Mtges., 5th Ed., Sec. 503

et seq. Where the mortgage is regarded as vesting the legal title in the mortgagee, subject to being divested upon payment of the mortgage debt, somewhat different rules apply. In such cases, it is held in some jurisdictions that an assignment of the debt does not pass the legal interest of the mortgagee to the assignee, and he cannot maintain replevin in his own name; though he may, in the absence of express stipulation to the contrary, bring an action in the name of the mortgagee, who holds, in such case, the legal title in trust for such assignee's benefit. A mortgage is incident to the debt secured, and it has been held that an assignment of the mortgage without the debt is either a nullity, or a transfer of the legal title in trust for the holder of the debt. Jones Chattel Mtges., *supra*. There are cases also which hold that, as to conditional sales, where the seller has transferred and indorsed the notes, he is still entitled to enforce the condition and replevin the property, he being interested as the indorser of the notes in securing satisfaction thereof out of the proceeds of the sale of the property. This is the holding in Tennessee, where the vendor retaining title is regarded as doing so as a mere security for the payment of the price, partaking of the nature of a lien. McDonald Automobile Co. v. Bicknell, 129 Tenn. 493, 167 So. W. R. 108, Ann. Cas. 1916 A, 265.

In Roof v. Chattanooga Wood Split Pulley Co., 36 Fla. 284, 19 So. R. 597, the Pulley Company sold a certain chattel, taking notes which provided for retention of title in the seller until paid. These notes, which embraced the contract and hence gave notice thereof, were indorsed and transferred to a bank with an express guarantee of payment by the indorser. There was default in the payment of the notes, and the Pulley Company brought a replevin suit in its name for the use and benefit of the bank for the recovery of the possession of the property. The court

held that replevin was essentially a possessory action and recovery could only be had by a plaintiff entitled to possession; that the indorsement of the notes did not vest the title to the property in the indorsee, but that it remained in the seller, the payee of the notes, and that upon default in the payment of the notes the seller could bring replevin in its own name, though the notes were still held by the bank. The words "for the use of," etc. were disregarded as being mere surplusage, and the judgment for plaintiff affirmed. The ruling in this case was followed in Malsby v. Gamble, 61 Fla. 310, 54 So. R. 766. It does not appear whether or not the notes in these cases were transferred merely as collateral. A transfer of such a note as collateral is held in some States to authorize replevin by the seller, on default, but there is, as we have seen, a strong current of authority to the effect that an assignment of the notes, when negotiable in form, even where the conditional sale contract is retained by the seller, constitutes an election to treat the debt as absolute and unconditional, and the sale likewise, vesting title in the purchaser. But in the two Florida cases just cited the conditional sale contract was embraced in the notes, and the indorsees took with notice of the conditional character of the obligation, and hence subject to any defense that the maker might have against the original payee. Sumter County Bank v. Hays, 68 Fla. 473, 67 So. R. 109. This Court has not, therefore, been called to pass upon the effect of a transfer by the seller of negotiable notes taken to evidence the purchase price of property sold under a conditional sale contract, where the seller retains the contract. We have seen that some courts hold that such a transfer constitutes an election and waives the seller's right in the property and confines him to the debt. It it be a true conditional sale, this would appear to be consistent, for any defense the purchaser might have

against the seller would avail him nothing as against a holder of the negotiable paper acquired in due course and without actual notice or knowledge of the purchaser's rights as against the seller. Prof. Williston, in his work on Sales, Section 579a, says:

"If it be granted that the seller is compelled to elect between treating the goods as his own, on the one hand, and treating then as the buyer's on the other, thus giving him on the first supposition the right to reclaim the goods, and on the second supposition the right to recover the price, it would seem that any manifestation of election to take one course or the other would be conclusive. It would follow, therefore, that bringing suit for the price would operate immediately as an election and preclude subsequent seizure of the goods, although the action for the price was discontinued.

"A better view, since it involves less practical injustice, is that the action for the price must be prosecuted to judgment in order to bar reclaiming the goods, or, at least, that a discontinuance of the action for the price before judgment prevents a conclusive election. Even these views, however, are without foundation in principle and unfortunate in result. The seller should be allowed to prosecute an action for the price to judgment, and retain the property in the goods as security to enforce payment of the judgment."

But the latter portion of Prof. Williston's comments are no doubt colored by his view of the inherent nature of such contracts. In section 330, he says:

"The situation is, therefore, identical with the case of the condition subsequent, except that in the case of

the condition precedent the seller has a bare legal title for the purpose of security only, while in the case of the condition subsequent the seller has only the right to regain a legal title on the happening of a condition.

"As the purpose of the seller's right, whether a legal title or whether a right to resume the title on breach of condition, is merely to give him security for pay-ment of the price, the transaction is in its essence a mortgage, though futile distinctions are often made."

"In determining whether a contract is to be regarded as a conditional sale or a mortgage," says Estrich, in his Installment Sales, section 77, "if it appears that * * * the instrument transferring an estate is intended between the parties as a security for money, the contract in equity is considered a mortgage. Theoretically, the distinction between a conditional sale and a chattel mortgage is clear. Practically, however, the contracts shade into one another, so that in the individual case it is often difficult to dis-tinguish between the two." Among the many cases cited in Dowdell v. Empire Furniture & Lumber Co., 84 Ala. 316, 4 So. R. 31. This was a case where there was a recovery in an action of trover for the conversion of certain personal property upon the theory that the contract involved consti-tuted a conditional sale. On appeal it was held to have been a mortgage, and the judgment reversed. Uncondi-tional notes were given for the purchase price. Among other things the court said, "In a conditional sale, the vendor has the right to rescind the contract of sale upon failure of the vendee to perform the condition; but in such a case the debt contracted for the purchase price of the property is extinguished. * * * By the terms of this instrument, an unconditional debt for the purchase price of the furniture was contracted."

There is a sharp conflict among the authorities on prac-

tically all features of the distinctions between conditional sales contracts and mortgages, and upon the rights of the respective parties under such sales contracts. This is particularly noticeable in the more modern cases, and is due no doubt to the varying forms of contracts and the ingenuity of vendors in so drafting their contracts as to give them as far as possible, in one contract, all the advantages which they would have under both species of transactions, at the same time escaping as far as possible the disadvantages of either.

A difference is observed in some cases between what is called a true conditional sale, and a conditional sale in which, though not held to be a mortgage, the title is held to be reserved by way of security.

In the case of Atkinson v. Japink, 186 Mich. 335, 152 N. W. R. 1079, it was held that where the plaintiff received $140.00 and two promissory notes for the purchase price of an automobile, and each of the notes contained a clause reserving title in the vendor with authority, if he deemed himself insecure, to resume possession and sell the car at public or private sale, and to endorse the proceeds upon the notes, the transaction amounted to a sale with reservation of the title as security for the indebtedness; that the mere reservation of title in the seller did not necessarily make the transaction a conditional sale; that where the contract imparts that the title is retained for security merely, the taking and holding of additional security is not inconsistent with such reservation. It was also held that by transferring one of the title retention notes to a bank as security for a loan, the plaintiff vendor did not lose his right to retake the car under the remaining note; that whoever held one of the instruments was entitled to secure possession of the car in case defendant committed a default

and the sale of either note passed a proportionate interest in the security.

In a later case, Young v. Phillips, 202 Mich. 480, 168 N. W. R. 549, it was said: "We may have been unfortunate, perhaps, in the use of certain language, in saying that the title is reserved as security only, because, under the present theory of a chattel mortgage, the giving of the instrument does not transfer title. * * * So that the giving of an instrument in form purporting to reserve title in the vendor, where the intent of the parties is the giving of security, is in reality the making of an absolute sale with the retention of a lien by way of security. * * * If the instrument purports to reserve title, and to give a right of action to recover the debt without passing title, the two being inconsistent according to the tests in Atkinson v. Japink, *supra,* it most be concluded that the intent of the parties was to make an absolute sale, with the reservation of a lien by way of security." The result of this reasoning would, under our statute, make such an instrument, in legal effect, an absolute sale with mortgage back to secure payment of the purchase price.

There is an abundance of authority on both sides of this proposition. See Estrich on Inst. Sales, Section 63 et seq. The weight of authority seems to be that absolute liability for the purchase price on the part of the buyer does not prevent a transaction from being a conditional sale. Estrich Inst. Sales, Sec. 661. In Bierce v. Hutchins, 205 U. S. 340, 51 Law Ed. 828, Mr. Justice HOLMES, speaking for the court, said:

"There remains the question whether the sale was conditional. Such sales sometimes are regulated by statute and put more or less on the footing of mortgages. With the development of its effects there has

been some reaction against the Benthamite doctrine of absolute freedom of contract. But courts are not legislatures, and are not at liberty to invent and apply specific regulations according to their notions of convenience. In the absence of a statute their only duty is to discover the meaning of the contract and to enforce it, without a leaning in either direction, when, as in the present case, the parties stood on an equal footing and were free to do what they chose.

"The contract says in terms that it is conditional, and that the goods are to remain the property of the seller until payment of the note given for the price. This stipulation is perfectly lawful. Harkness v. Russell, 118 U. S. 663, 30 L. Ed. 285, 7 Sup. Ct. R. 51. So that the only question is whether any other provision of the contract is inconsistent with this one, or qualifies and explains it as intended to do less than it purports to do when taken alone. * * * Of course, the absolute liability for the price, and putting that liability in the form of a note, are consistent with the retention of title until the note is paid. Parties can agree to pay the value of goods upon what consideration they please (White v. Solomon, 164 Mass. 516, 30 L. R. A. 537, 42 N. E. R. 104), and when a purchaser has possession and the right to gain the title by payment, he cannot complain of a bargain by which he binds himself to pay and is not to get the title until he does.''

See also Bailey v. Baker Ice Machine Co., 239 U. S. 268, 60 Law. Ed. 275.

In the case of Campbell Motor Co. v. Spencer, (Ala. App.) 116 So. R. 892, it was held that a contract for the conditional sale of motor trucks, which not only reserved title, but also authorized resale of the property upon reducing it to possession and application of proceeds to bal-

ance due on purchase price, together with provision that if any balance remained unpaid the buyer should be held liable for the defiiciency, was held valid and binding. In the able opinion of SAMFORD, J., it is said that this clause in such a contract has been upheld as enforceable by many courts of last resort, excepting those of Arkansas and Minnesota.

This court held a similar contract enforceable by replevin in Mizell Live Stock Co. v. J. J. McCaskill Co., 59 Fla. 322, 51 So. R. 547. The contract in that case retained title in seller till purchase price was paid, and provided that in case of default, the seller could retake the property, sell it at public or private sale, credit the proceeds on the note, and if there should be any balance due, the seller could proceed to foreclose on other personal property for the collection of such balance; a mortgage on such additional property being embraced in the same instrument. See also Dodson Printers Supply Co. v. Corbett, 78 Fla. 257, 82 So. R. 804, wherein the contract provided for retention of title until payment made, the retaking of possession by seller on default, sale of same at auction to highest bidder after giving legal notice, and out of the proceeds to pay the expense of recovering and selling the property, and apply the balance on the unpaid notes, rendering the surplus, if any, to the purchaser. Although the instrument contained references to a foreclosure and a lien, it was held to be a conditional sale contract, and the seller, on default by purchaser, entitled to recover in replevin.

Let us now consider the contract here in question in the light of these principles. While the contract contains certain provisions more appropriate to a mortgage than to a conditional sale, we think the language used indicates that the prevailing purpose of the parties was to effectuate a conditional sale rather than a mortgage. Let us see if the

contract can be so construed as to validly effectuate this paramount purpose.

The contract here in question retains the title in the seller until all of said notes, with interest and cost of collection, attorney's fees, and disbursements by the seller, and any judgment which may be rendered in said notes or any of them, shall have been paid, and that no negotiation of the notes shall constitute a waiver of these conditions.

In so far as the contract retains the title until the debt as evidenced by the notes is paid, this clause is valid; but under our decisions, in so far as this clause would permit a personal action against the purchaser for the recovery of the debt without waiving the right to pursue the property, it must be held ineffective and unenforcable, if the contract is to be upheld as a conditional sale contract. As to the provision that the negotiation of the notes shall not waive the retention of title until the notes are paid, we hold that the purchaser may validly agree to such negotiation, but if any indorsee or assignee of the notes should sue the purchaser thereon, the effect upon the seller's right to pursue the property would be the same as if he himself had retained the note and on default brought suit to recover the debt evidenced thereby against the purchaser. Our decisions are clear to the effect that in a conditional sale, the seller cannot sue the purchaser on the debt and retain his title to, and right to take back the possession of, the property; nor can he take back the property and then sue to recover the debt; nor has he power to grant to another any right to pursue these inconsistent remedies. When the seller takes negotiable notes for the purchase price, and negotiates them, thus placing an unconditional power in the hands of a holder who acquires the note or notes in due course to sue thereon in case of default, the seller's right to proceed to recover possession of the property in case of

default is suspended until he reacquires the outstanding notes; otherwise he might take back the property and yet leave the purchaser unconditionally liable on the debt, and subject to suit and recovery of judgment against him by the holders of such negotiable paper. We think the learned trial judge had the proper conception of the legal effect of the contract in this regard. There are other provisions of the contract, which we will presently advert to, which tend to show that such was the real intention of the instrument.

As to the acceleration clause, it will be noted that the option, on default, breach of covenants, etc., to declare all notes due and payable, is to be exercised, not by the seller as such, but by "any holder of the unmatured notes and contract." This would appear to exclude the seller unless he was also the holder of all the unmatured notes and contract. At the time this suit was brought, the seller was not the holder of the eleven unmatured notes, though he did hold one defaulted note and the contract. This clause did not therefore give him the right to declare the unmatured notes due.

Then follows the clause that the seller, apparently without regard to whether he is the holder or not, may at his option, by suit or otherwise, enforce payment of the notes, without waiving his right to take possession of the car on default "as herein set forth." This clause is inconsistent with the principles of a conditional sale, and entirely nugatory under our former decisions.

The next paragraph provides that in case of any default in payment, or breach of covenant, etc., the purchaser shall, on demand by the seller, or his assigns, deliver the car; and should he fail to do so on demand, the purchaser agrees that "the *bona fide* holder of the notes and contract" shall have the right to take possession, with or without process of law, and "at the option of the *bona fide* holder of the

notes and contract all payments made by the purchaser shall be be retained as liquidated damages," etc., *or*, the car may be sold at public or private sale, and the "seller or assigns" may become the purchaser, and if upon such sale the proceeds are insufficient to pay the sums remaining unpaid on the notes, with interest and expenses incurred, "any deficiency shall be paid by, and any surplus shall be paid to, the purchaser."

So, the right to repossess the car on default was by the contract vested "in the *bona fide* holder of the notes and contract." Therefore, when suit was brought, the plaintiff seller, holding at best only one of the notes, together with the contract, did not, under the contract, have the right to repossession. It is true, he acquired all the notes before the suit was tried, but the general rule in actions at law is that the right of a plaintiff to recover must be measured by the facts as they exist when the suit was instituted. Cobbey on Replevin, 2nd Ed., Sec. 257; 1. C. J. 1149. Thus the court below was correct in holding that the suit was prematurely brought. In confining the right to repossess the property to the holder of the notes and contract, the agreement between the parties was in keeping with the law of conditional sales, as construed by this court in the American Process case and in Selton v. Sinclair, *supra*, to the effect that the seller may not elect to retake possession of the property and then sue on the debt. But if the contract had permitted the seller to take back the property, with the negotiable notes outstanding in other hands, it would have made possible a violation of this principle.

But the alternative provision in the repossession clause, to the effect that the holder of the notes and contract may, in addition to retaking possession, sell the property, apply the proceeds on the debt and then hold the purchaser

liable for any deficiency, is, as to the last provision, incompatible with the true theory of a conditional sale, as construed by this Court in the cases above referred to. He may, on default, repossess the property, and if he so desires, sell it, but he cannot take the property and also pursue the purchaser for the debt. When he elects to retake the property as owner, this necessarily precludes any recovery of the balance due on the debt. Estrich Inst. Sales, Sec. 374. He cannot pursue both remedies under a contract of conditional sale. If the contract constituted a chattel mortgage, he might of course go into equity and obtain a foreclosure sale of the property and then pray for a deficiency decree for the balance, if any, remaining unpaid.

Thus construing the legal effect of the contract here in question, we think it can be upheld as a conditional sale contract.

The plaintiff was not, therefore, on the pleadings and evidence, entitled to recover, and the trial court was not in error in reaching this conclusion. But there was error in the court's instruction, and in the verdict and judgment based thereon, as to the defendant's rights against the plaintiff. The astounding result reached shows that there must have been error somewhere.

If, by paying only $1000.00 on the purchase price, the purchaser can enjoy the possession of the property for six weeks, then default for the remainder, nearly $3000.00, and after repossession by the seller, can, by any rule of law, become entitled to recover the full value of the property when taken back by the seller, and $10,560.00 for its use from the time of the taking to the time of the verdict, there must be something wrong with the rule. Such a rule would put a premium on the breaking of a contract, and make its breach more profitable than its performance.

The defendant was not the owner of the property, and was not entitled to a verdict against the plaintiff, the general owner, for its full value, at the time of the taking, as shown by the evidence, to-wit, $3000.00. He only had an equitable or special interest in the property, in the nature of a vendee's equitable lien, proportionate to the amount of the purchase price which he had paid, which in this case was $1000,00, or approximately one-fourth of the total purchase price. Thus the verdict and judgment should have been for the value of the defendant's special interest, which was approximately one-fourth the value of the property at the time of the wrongful taking and which could not in any event have exceeded the amount he had paid on the purchase price of the property. The second paragraph of Section 5347, Comp. Gen. Laws, should in a case of this kind be construed in connection with Section 1 of Chapter 9320, Acts 1923, now appearing as Section 5348, Comp. Gen. Laws, and which reads as follows:

(5348.) "In all actions of replevin where the right of possession of the prevailing party in the suit, whether plaintiff or defendant, is based upon a claim of lien or some special interest in the property replevined, and such property at the time of entering judgment is in the possession of the adverse party, then the judgment shall be entered for the possession of the property and against the adverse party and his sureties only for the amount of the lien or the value of such special interest duly established and costs. And the prevailing party shall have the same right of election as provided in Section 5346, paragraph 2."

This appears to have been the law independent of statute. 34 Cyc. 1536, 1568; Shinn on Replevin, secs. 629, 635, 642, 684; Cobbey on Replevin, 2 ed., secs. 1072, 1136, 1148.

In Florida Trust and Banking Co. v. Consolidated Title Co., 98 So. R. 915, 86 Fla. 317, it was held that as a general rule the value of the property at the time of the unlawful detention, with interest thereon from the date of the taking, was the measure of recoverable damages. An exception to the general rule is that where property has a use value, the damages for the detention may be the value of the use. 23 R. C. L. 914. This rule seems to be adopted where the use value exceeds the lawful rate of interest, in which case the successful party is entitled to recover the value of such use during the period that he was wrongfully deprived thereof. 34 Cyc. 1562, et seq. Of course, damages should not be allowed where the evidence fails to show that any were sustained. 34 Cyc. 1560.

No evidence was offered by the defendant on this subject. There was evidence for the plaintiff showing the rental value of the truck, but under the contract the defendant was not entitled to use of the truck for hire, or to let the same, without the written consent of the holder of the notes and contract, and there was no evidence of such consent. Nor was there any evidence showing what the value of the use of the truck was to the defendant himself, and hence there was no basis in the evidence for any verdict or judgment for damages to the defendant for wrongful detention of the property.

In Shinn on Replevin, Section 646, it is said: "The damages for the use of the property cannot be recovered unless the party shows that the property has a usable value, and that he was in a position to use it, and was prevented from doing so by the wrongful detention of his adversary."

While the eleven purchase money notes which were unmatured at the time the suit was brought, but which were subsequently paid by the plaintiff, were not admissible in evidence for the purpose for which they were introduced,

they might well have been admitted for the purpose of showing the amount of the purchase money which the defendant had failed to pay, as well as the time, when, by their re-acquisition, plaintiff became entitled to repossession of the car, and thus tending to prove the amount of defendant's special interest in the property and the period for which he was entitled to ·damages for wrongful detention. As damages are often recoverable by the prevailing party up to the time of the verdict, or for some period after suit was begun, evidence of facts transpiring after the suit was instituted and· before verdict, which would have a legitimate bearing upon the amount of damages properly recoverable by the prevailing party, may be admitted in evidence. In this connection it is said, in Section 1148 of Cobbey on Replevin:

(1148.) "The judgment in replevin should so far as possible adjust all the equities which arise between the parties to the suit in its progress, and in a suit by the general owner against one who claims a special interest. If defendant's interest in the property expire, such fact should be shown and considered in rendering judgment, which in such cases should be for costs only."

The errors pointed out require a reversal of the judgment.

Reversed and remanded.

TERRELL, C. J., AND ELLIS, J., concur.

WHITFIELD, P. J., AND STRUM AND BUFORD, J. J., concur in the opinion and judgment.