This case is here on writ of error to the Circuit Court of St. Johns County, to review a judgment in favor of General Motors Acceptance Corporation as claimant and against M. D. Baer and Dora Tarlinsky, as plaintiffs in execution. For convenience the parties to this appeal will be referred to as claimant and plaintiffs respectively.
On September 24, 1929, a distress warrant for rent in favor of plaintiffs was issued and executed upon the contents of the building and premises in question which were occupied by the Chadwick Motor Co. Inc., who was a dealer in automobiles and accessories. On October 8, 1929, a claim affidavit and bond were filed by the General Motors Acceptance Corporation claiming that it owned five of the cars so attached. On November 13, 1929, a trial was had upon the distress warrant and a judgment *Page 915 
was entered against the defendant and in favor of plaintiffs lessors in the sum of $700.00 and costs. At the sale of the remaining property under the distress judgment only $300.00 was realized and after deducting legal costs there remained only $277.75 to be credited on the judgment of $700.00 and costs.
The claim affidavit set up that the title, to and ownership of, the five automobiles was in claimant and not in the dealer. Upon issue being joined thereon the case came on for trial, and the court instructed a verdict and rendered judgment thereon in favor of claimant. After a motion for new trial was denied, plaintiffs took writ of error.
It appears that Chadwick Motor Company as dealer sold the five cars to persons who paid a part of the purchase price in cash and for balance due executed what is called a "conditional sales contract" in triplicate. This contract required the "original to be sent to General Motors Acceptance Corporation." The contract also provided for the purchase of the described motor car for a certain price payable so much on or before delivery with deferred balance payable at the offices of General Motors Acceptance Corporation in equal installments; that "title to said property shall not pass to the purchaser until said amount is fully paid in cash;" that "in the event the purchaser defaults on any payment due on this contract * * * the full amount shall, at the election of the seller, be immediately due and payable;" that any sheriff or other officer may take immediate possession of said property and seller may resell said property so retaken at private or public sale without demand for performance with or without notice to the purchaser upon *Page 916 
such terms and in such manner as the seller may determine; that from the proceeds of such sale the seller shall deduct all expenses for retaking, etc., the balance to be applied to the amount due; and that "any repossession or retaking or sale of the property pursuant to the terms hereof shall not operate to release the purchaser until full payment has been made in cash." The purchase contract is signed "Chadwick Motor Company, Inc., by Thomas R. Lewis, V. P." and is also signed by the purchaser.
The following appears on the reverse side of the above-mentioned contract:
 DEALER'S RECOMMENDATION, ASSIGNMENT, AND GUARANTY
 "To General Motors Acceptance Corporation: * * *
 "For value received, the undersigned does hereby sell, assign and transfer to the General Motors Acceptance Corporation his, its or their right title and interest in and to the within contract and the property covered thereby and authorizes said General Motors Acceptance corporation to do every act and thing necessary to collect and discharge the same.
 "In consideration of your purchase of the within contract, the undersigned guarantees payment of the full amount remaining unpaid hereon, and covenants if default be made in payment of any instalment herein to pay the full amount then unpaid to General Motors Acceptance Corporation upon demand, except as otherwise provided by the terms of the present General Motors Acceptance Corporation Retail Plan. The liability of the undersigned shall not be affected by any settlement, extension of credit, or variation of terms of the within contract effected with the Purchaser or any other person interested. The undersigned *Page 917 
waives notice of Acceptance of this guaranty and notices of non-payment and non-performance.
 "Chadwick Motor Company, Inc. (L.S.) ----------------------------- (Seller's Signature)
 Thomas R. Lewis, V.P. ------------------------------ (Official Title, if Company)"
It appears that the five purchasers failed to make the deferred payments as provided in said contracts, and the cars were repossessed as indicated by papers similar to the following, the provisions of which may be applied to all five cars:
 "RECEIPT FOR REPOSSESSED CAR
 "Identification No. 13058
 "The undersigned dealer hereby acknowledges receipt from GMAC of the following:
 Chevrolet Cabriolet 1927 3831811 9AA-90685 --------- ---------- ---- --------- ---------- Make Model 1927 Year Motor No. Serial No.
 for storage purposes only. It is understood that the undersigned will be liable for any charges which may accrue against the car and agrees that the car will not be disposed of until the outstanding balance due General Motors Acceptance Corporation is paid.
 "Date Sept. 20, 1929 ---------------
 Signed Chadwick Motor Co. Inc. ------------------------
 By Thomas R. Lewis V.P." ---------------------
At the trial testimony was taken with regard to the intent and purpose of the "assignments" and "receipts," as interpreted by witnesses connected with the transaction which may properly be done in such cases when the question is raised as to whether the transaction involved was in substance or intended as a security for a loan. See Chaires v. Brady, 10 Fla. 133; Hull v. Burr, 58 Fla. 432, 475, 50 So. 754, and cases there cited.
A. W. Chadwick, Jr., President of Chadwick Motor *Page 918 
Co. Inc., a witness for claimant at the trial for the release of the five cars from the distress for rent, testified in part that on October 18, 1926, he leased the premises in question from M. D. Baer and M. R. Glickstein for the Chadwick Motor Company for a period of five years at a stated rental; that rent was paid until January 22, 1929, when it was delinquent in the amount of $500.00; that the cars in question were repossessed from purchasers because of the nonpayment of certain instalments; that the cars levied upon were the property of General Motors Acceptance Corporation and were being held for it, and that under the terms of the agreement the Chadwick Motor Company was obligated to pay the outstanding balance to claimant and the cars would then become the property of the Chadwick Motor Company.
Thomas R. Lewis, vice-president and general manager of Chadwick Motor Co., Inc., also a witness for claimant, testified "that it was considered as just a loan and said contracts were assigned to General Motors Acceptance Corporation as security for the loan by General Motors Acceptance Corporation to Chadwick Motor Company, Inc."
C. A. Murphy, the assistant secretary of the claimant, testified that it was one of his duties to pass on the disposition of repossessed automobiles; that dealer repossessed the cars as agent of General Motors Acceptance Corporation to hold for its account; that cars were not to be sold or disposed of until claimant's outstanding balance due should be paid; that no charges were made by dealer for storage, but the repossessed cars were stored for the consideration of claimant's "allowance of a reasonable time" to dealer "to arrange for the payment" *Page 919 
to claimant "of the sums due under respective conditional sales contracts, and to procure a resale of said automobiles to that end;" that "upon the payment of the outstanding balance due on the conditional sales contracts * * * or any of them, the title to the automobile * * * should become vested in Chadwick Motor Company, Inc."
The only witness for the plaintiffs in execution, M. D. Baer, testified that the rent on the premises at the time of distress suit was long past due; that plaintiffs from time to time inspected the premises; that they observed and took into consideration the number of cars kept on the premises for sale in permitting the rent to become in arrears; and that rent had been in arrears since September, 1928.
Plaintiffs in execution moved for a directed verdict at the close of taking of testimony upon the grounds among others that the purported sale and transfer to the claimant of the conditional sales contracts, together with the property mentioned therein, was a mere mortgage, and that there was no record or other actual notice of the same to the plaintiffs in execution; that the goods were subject to the levy made by virtue of the distress warrant because of the relationship of the parties evidenced by the storage receipts now in evidence; and that the lien of plaintiffs in execution for rent accrued before the alleged title and claim of claimant.
The trial court denied the above motion. Thereupon a formal motion was made by claimant for a directed verdict in its favor which was granted and judgment duly entered thereon. A motion for new trial being denied, writ of error was taken, and the errors assigned by plaintiffs in execution raise substantially the same issues as the above motion for a directed verdict and all errors assigned will be considered together. *Page 920 
Under Section 4363, Compiled General Laws of Florida, 1927, if, after all the evidence of the parties shall have been submitted, it is apparent to the judge that no sufficient evidence has been submitted upon which the jury could legally find a verdict for one party, he may direct the jury to find a verdict for the opposite party.
It has been held by this court that whether a "written instrument" is in legal effect a chattel mortgage is a question of law, to be determined by the court and that it is error to submit such question to the jury. See Georgia Home Ins. Co. v. Hoskins, 71 Fla. 282, 71 So. 285. This Court has also held that the burden of proof is on one asserting a conditional contract to be a mortgage. See Cary Co. v. Hyer, 91 Fla. 322,107 So. 684, and cases there cited.
Section 5724, Compiled General Laws of Florida, 1927, provides as follows:
 "All deeds of conveyance, obligations conditioned or defeasible, bills of sale or other instruments of writing conveying or selling property, either real or personal, for the purpose or with the intention of securing the payment of money, whether such instrument be from the debtor to the creditor or from the debtor to some third person in trust for the creditor, shall be deemed and held mortgages, and shall be subject to the same rules of foreclosure and to the same regulations, restraints and forms as are prescribed in relation to mortgages."
Under the above statute, it has been repeatedly held that an instrument purporting on its face to be a deed or bill of sale or a contract of sale may be shown by parol evidence to be a mortgage. Smith v. Hope, 51 Fla. 541, 41 So. 69; Elliott v. Connor, 63 Fla. 408, 58 So. 241; *Page 921 
Cary Co. v. Hyer, supra; Pittman v. Milton, 69 Fla. 304, 68 So. 658.
Plaintiffs in execution contend that the five cars levied upon for rent, under all the circumstances as developed by the exhibits and testimony in reference thereto, were liable for the rent, in that the assignment of dealer's right, title, and interest in and to the contracts to claimant with provision that the dealer thereby guaranteed the payment of all defaulting instalments, is in effect a mortgage, and if held under the circumstances to be security for a loan that the cars in question would be subject to the said levy for rent as being the property of dealer.
In the case of Voges v. Ward, 98 Fla. 304, 123 So. 785, it was held that upon the breach of a conditional sales contract the vendor may either (1) treat the sale as absolute and sue for the price thereof, or (2) he may treat the sale as cancelled and recover the property, but he cannot pursue both courses; and the election to pursue either one of the two inconsistent remedies may in law operate as an abandonment or a waiver of the other.
A conditional-sales contract reserving title in dealer, upon being assigned, gives the assignee the legal status of the dealer and in default of payments the assignee may repossess the property involved wherever it may be found. In the case of Commercial Credit Co. v. Neel, 91 Fla. 505, 107 So. 639, it was held that:
 "Where the seller of a truck reserved title thereto under a conditional sale contract and then assigned the contract and his right, title and interest in the property therein mentioned to a third party and thereafter the buyer returned the truck to the seller and the seller though having then no title in the truck sold *Page 922 
it to the defendant, no title passed by such sale to the defendant and the holder of the title under conditional sale contract may upon default of the conditions of the contract recover possession of the truck in an action duly instituted for that purpose."
To the same effect see the case of State Bank of Black Diamond v. Johnson, 104 Wn. 550, 177 P. 340, 3 A. L. R. 235, cited in the above Florida case, wherein it was held that the assignment by the dealer to the bank transferred all of the dealer's "right, title, and interest" to the within "conditional sales contract" which contract was transferred to the bank with the following guaranty;
 "I hereby guarantee the payment and fulfilment of the within contract at the time and in the manner therein stated."
In this case it was held that the dealer
 "possessed under the conditional sale contract two alternative rights: (1) The right to retake the automobile upon the failure of * * * (purchaser) to comply with the terms of the conditional sale contract; and (2) the right to look to * * * (purchaser) as a debtor owing the balance of the purchase price."
It was also held that both the rights were transferred by the dealer to assignee by the assignment. The court further said:
 "It is true the assignment guaranteed 'the payment and fulfilment of the within contract,' but these words, as we view them, had no other effect than to render * * * (dealer) liable as a guarantor, not only for the payment of the balance due upon the purchase price, should the * * * (assignee) elect to seek recovery of such balance as a debt, but also as a guarantor of the return of the automobile, should the * * * (assignee) elect to claim that right upon the failure of * * * *Page 923 
(purchaser) to pay the balance of the purchase price.'
Another case very much in point is that of Commercial Credit Co. v. Phoenix Hudson-Essex, Inc., 33 Ariz. 56, 262 P. 1, wherein it was held that the credit company's election to retake and retain the automobile upon the buyer's default in payments discharges the dealer as guarantor; also that if for any reason there is no resale, after taking possession, the matter is governed by Section 23 Chapter 40, of the Uniform Sales Act of Arizona, Laws of 1919 (Section 2904 Rev. Code of Ariz. 1928) providing that:
 "Where there is no resale, the seller may retain the goods as his own property without obligation to account to the buyer except as provided in section 25, and the buyer shall be discharged of all obligations."
So far, the so-called uniform sales law has not been enacted in this State. However, the above-referred-to provisions of the Arizona Act and the decisions thereon are in substance the same as the law on this subject in our State. See Malone v. Meres,91 Fla. 709, 109 So. 677; Voges, v. Ward, supra; Helton v. Sinclair, 93 Fla. 1121, 1126, 113 So. 568, 570.
There are other well-recognized authorities to the contrary, as may be noted from the case of Bedard v. Ransom,241 Mass. 74, 134 N.E. 392, 25 A. L. R. 1488, wherein it was held that:
 "A provision of a conditional sale contract that, in case of default, all sums paid should be retained as rent, and that, in addition to recovering possession, the seller might collect all sums remaining unpaid as liquidated damages, though hard and oppressive, is valid."
The court, however, speaks of it as a "hard and oppressive *Page 924 
contract" and sustains it on the ground that "the parties were free to make such a contract."
Our Court in taking the opposite view of this question has said:
 "There is no doctrine more thoroughly established in this State than that when one holds a conditional sales contract in which he reserves the title to the personal property sold and retains the right, upon the failure of the vendee to make the stipulated payments, to retake possession of the property, cannot after exercising his right to retake the property continue the pursuit of the purchaser on the debt. He cannot be both owner of the property sold and creditor of the vendee for the amount of the purchase price. He cannot have both the remedy of retaking possession of his property and suit to enforce the debt for the purchase price. See Malone v. Meree, 91 Fla. 709, 109 S. R. 677; American Process Co. v. Fla. White Pressed Brick Co., 56 Fla. 116, 47 South Rep. 942, 16 Ann. Cas. 1054." Helton v. Sinclair, 93 Fla. 1121, 1126, 113 So. 568, 570. See also Voges v. Ward, supra.
If a retained-title vendor, after repossession, cannot be both owner of the property sold and creditor of the vendee for the amount of the purchase price, it follows that his assignee of title cannot be both owner of the property and creditor of the assignor, even though assignor guarantees the payment, as such guaranty does not change the rule.
In the case at bar it must be assumed that claimant by repossessing the cars elected to treat the sale as cancelled, and it thereby released the purchaser. In effect, by the assignment the claimant took the shoes of the dealer, and by repossession the dealer took the shoes of an agent in possession with title resting in claimant. *Page 925 
Under the facts and circumstances as shown by the written instruments and the evidence the assignment could not be properly construed to be in substance or intent a mortgage.
The question arises: Were the cars, under the facts, liable for the rent?
Under Section 5420, Compiled General laws of Florida, 1927, every person to whom rent may be due shall have a lien for such rent upon all property of lessee or sublessee "found upon or off the premises" and "usually kept on the premises" which lien shall be "superior to any lien acquired subsequent to the bringing of such property on the premises leased." Ruge v. Webb Press Co., 71 Fla. 536, 71 So. 627, L. R. A. 1916F, 446; Crandall's Fla. Common Law Practice, 581.
A case in point on the above question is that of Western States Securities Co. v. Mosher, 28 Ariz. 420, 237 P. 192, wherein it was held that:
 "Where tenant company made conditional sale of car from its stock, and then assigned and transferred its right, title, and interest in sales contract to another, the car was no longer its property, but that of transferee, to be disposed of as provided in Uniform Sales Act, and was not subject to statutory lien of landlord under Civ. Code 1913, par. 3671, though upon tenant's premises when seized."
 The statute referred to above provides that the "landlord shall have a lien on all the property of his tenant not exempt by law, placed upon or used on the leased premises until his rent shall be paid, * * * but no property of any other person, although the same may be found on the premises,"
is liable for such rent. The last part of this sentence providing that no property of any other person, although *Page 926 
the same may be found on the premises, is liable for such rent, is not different from the rule obtaining in this State.
In the case of Hudnall v. Paine, 39 Fla. 67, 21 So. 791, it was held that when property is being purchased by the tenant under a retained title contract the vendor who has retained the title has priority over the lien for rent. In the case of Edwards v. Baldwin Piano Co., 79 Fla. 143, 83 So. 915, it was held that unless the pianos, titles to which were retained in vendor, became and were defendant's (dealer's) property under the law they were not subject to levy and sale for rent while in a rental storeroom.
Finding that the cars were not liable for the rent, it follows that the judgment of the trial court should be affirmed.