99 So.2d 706 (1958)
Harry KANTER and Rose Kanter, his wife, Appellants,
v.
Jennie SAFRAN and Emerick Gluck, Appellees.
Supreme Court of Florida.
January 10, 1958.
Rehearing Denied February 6, 1958.
*707 Klein, Moore & Kline, Miami Beach, and Weldon G. Starry, Tallahassee, for appellants.
Sibley, Grusmark, Barkdull & King and Milton G. Grusmark, Miami Beach, for appellees.
HOBSON, Justice.
This litigation now makes its third appearance before this court. See Kanter v. Safran, Fla., 82 So.2d 508, and Fla., 68 So.2d 553. In the later opinion, we reversed the decree appealed from without prejudice to the lessees to sue for an accounting at the expiration of the term of the original lease between the parties. After the expiration of the term, the lessees brought suit and the lessors counterclaimed for damages. It was alleged by the lessees and admitted by the lessors that the hotel which was the subject matter of the litigation had been sold prior to the termination date of the original lease agreement between the parties. The court was of the opinion that the sale of the leased premises had rendered it impossible to ascertain the damages which might have resulted from the default of the lessees and, accordingly, no damages were awarded upon this account. The lessors, as appellants, contend that this ruling was error.
In order to understand the issues involved, a brief recapitulation is in order. By the two previous appeals to this court it has been established, inter alia, that the original default was chargeable to the lessees, and that the lessors had elected to relet the premises for the lessees' account. The lessees were entitled to the return of their security deposit, but against this entitlement there was to be set off special damages, and such general damages as the lessors had sustained as a result of the breach. The amount of such damages might have exceeded the security deposit. With special damages, which were awarded by the chancellor, we are not here concerned. It remained to settle the account between the parties, and this could be done only at the expiration of the term of the original lease. This period expired on October 1, 1955.
Where, as here, the lessors elect to relet the premises for the lessees' account, the lessors' claim for general damages, if any, is measured by "the difference between the rentals stipulated to be paid and what, in good faith, the landlord is able to recover from a reletting." Kanter v. Safran, supra, 68 So.2d 553, 557; Williams v. Aeroland Oil Co., 155 Fla. 114, 20 So.2d 346, 348. See also Campbell v. McLaurin Inv. Co., 74 Fla. 501, 77 So. 277.
The measure of general damages was abundantly clear and to set them off against the security deposit it was incumbent upon the lessors to prove them. As part of this proof it was necessary for the lessors to establish that they had in good *708 faith attempted to recoup what they could, consistent with their own interests as well as those of the defaulting lessees. Kanter v. Safran, 82 So.2d 508, 509.
A new lease, which we considered in the later appeal of this case, was entered between the lessors and third party lessees on September 28, 1953. This lease was for a term of five years, commencing October 1, 1953, and terminating on September 30, 1958. It was established in the current litigation, however, that the new lease was cancelled on July 20, 1954, and the property was sold by the lessors on March 31, 1955. It appears from the present record that the actual reletting of the premises lasted for only one hotel season (less than one year) and that for the balance of the time between the original breach and the sale of the premises the lessors operated the hotel themselves at an alleged loss. No satisfactory explanation was forthcoming as to why the new lease was cancelled after so short a time, apparently without liability to the third party lessees (a cancellation of this lease, releasing all parties therefrom from its covenants, terms and conditions, for "ten dollars and other good and valuable considerations", is contained in the record) or why the property was sold. The only proof which the lessors offered regarding general damages consisted of testimony by an accountant who stated his conclusions as to what the losses had been, based upon his recollection of the original lease, which was not even introduced in evidence or appended as an exhibit to any pleading in the suit. The records upon which his testimony was based were asked for, but apparently were never produced.
As an example of the difficulty we encounter with the accountant's testimony, he testified that "The lease year from October 1, 1953 to September 30, 1954, on the basis of taking $33,000, the gross rental, with the payment of taxes and insurance deducted, would wind up with a net loss of $14,955.56." $33,000 was the annual rental under the original lease, Kanter v. Safran, 68 So.2d 553. But the new lease was in effect from October 1, 1953 to July 20, 1954, and all rental payments for that year were to have been made, under the new lease, between December 15, 1953, and March 15, 1954, and were deemed to have accrued when due, so that the lessors should have received them all. The copy of the new lease in the record provides for a total rental of $155,000 for five years, payable each year at the stated times and in stated amounts. The stated amounts are typewritten, but some of them are lined out in pencil, with smaller amounts pencilled in over them. The typewritten amounts total $31,000, or one fifth of $155,000, while with the pencilled changes they would total $28,050. But even if the lower figure were correct as representing the agreed rental under the new lease for 1953-54, this figure, subtracted from $33,000, would leave $4,950, which is about $10,000 away from the "net loss of $14,955.56", to which the lessors' accountant testified for that year. In this connection, we also note that the new lease provided for a security deposit in the amount of $31,000 to stand as security for unpaid rent among other things.
The lessors' accountant testified on cross-examination that real estate (advalorem) taxes on the hotel had been included as contributing to the loss, but admitted that such taxes were to have been paid by the lessors and not by the lessees.
These problems were perplexing to the chancellor, for he stated:
"I was willing to stretch a point to give these general statements as to what the loss was, but obviously we cannot rest upon that entirely since questions have been asked on what it was based. All kinds of mistakes could be made. Figures could be pulled out of the air. If you are going to charge the lessee with losses after you have taken it over for his benefit, certainly you must be able to answer any question that is asked in regard to where you get your figures; any question that bears upon any item. *709 It seems to me it does not matter what it is."
So far as is revealed by this record, upon which error is sought to be predicated, no further clarification was forthcoming.
Although we do not necessarily subscribe to the chancellor's theory that the damages were impossible to ascertain because the demised premises had been sold prior to the expiration of the original term of the lease, we are of the opinion that no general damages were proved which would support a decree for the lessors, and that the record is woefully deficient in this regard. Accordingly, no error has been demonstrated in the result which was reached in the final decree appealed from.
Affirmed.
TERRELL, C.J., and THOMAS, THORNAL and O'CONNELL, JJ., concur.