290 So.2d 3 (1974)
Lester N. MANDELL et al., Petitioners,
v.
C. R. FORTENBERRY et al., Respondents.
No. 42891.
Supreme Court of Florida.
January 16, 1974.
Rehearing Denied March 11, 1974.
*4 John M. Robertson of Robertson, Williams & Duane, Orlando, for petitioners.
William E. Weller of Rose & Weller, Cocoa Beach, and Walter C. Shepard of Shepard, Shepard & Minot, Cocoa, for respondents.
BOYD, Justice.
This cause is before us on petition for writ of certiorari to review the decision of the District Court of Appeal, Fourth District, reported at 271 So.2d 170.
The facts, as found by the District Court, are as follows:
"This is an appeal from a final judgment of the Circuit Court for Orange County, Florida, in a case tried without a jury. On 26 November 1968 the plaintiffs filed an amended complaint which alleged that on 14 June 1963 the defendant Rockett Builders, Inc., executed a note and mortgage to American Federal Savings and Loan Association for $43,300.00. The other named defendants were alleged to have endorsed the note before it was delivered to American Federal. A copy of the mortgage is attached to the complaint. The plaintiffs joined in the execution of the mortgage, but did not assume the obligation to pay the note which it secured. Plaintiffs executed the mortgage solely for the purpose of imposing the mortgage lien on the plaintiffs' interest in the real property described in the mortgage. The complaint avers that the defendants defaulted on the note which the plaintiffs thereafter *5 paid. The relief sought was a declaration that the plaintiffs were entitled to sue the defendants on the promissory note and a judgment thereon for the amount paid on the note, together with interest, costs, and attorneys fees.
"The evidence and the factual stipulations of the parties indicate that the plaintiffs as owners of a tract of land in Brevard County, Florida, executed a ninety-nine year lease to the defendant Rockett Builders, Inc., on 15 November 1962. The lease term commenced 1 January 1963. The lease provided that any building or permanent improvement erected on the premises would immediately become the property of the lessors. The lease also provided that in the event the lessee desired to mortgage the leased property, the lessors, without assuming any liability for the repayment of the debt, would join in the execution of the mortgage. On 14 June 1963 the defendant Rockett Builders, Inc., executed a note to American Federal Savings and Loan Association in the amount of $53,300.00 payable in monthly installments. The note was endorsed by the other defendants as accommodation endorsers. The note was secured by a mortgage of even date executed by Rockett Builders, Inc., to American Federal Savings and Loan Association. The mortgage encumbered the real property subject to the ninety-nine year lease, and the plaintiffs joined in the mortgage in accordance with the requirements of the lease.
"The note went into default on 1 March 1965 and was paid off by plaintiffs on 3 June 1968. The amount paid to extinguish the principal and interest due on the note was $58,142.87. Additionally, defendant Rockett Builders, Inc., went into default on the ninety-nine year lease. As a consequence the plaintiffs retook possession of the leased premises either by voluntary relinquishment by the lessee or by a judicial eviction. It is expressly admitted by the defendants that there was no foreclosure of the mortgage.
"At the completion of all the evidence, the trial court entered a final judgment in favor of the defendants which found:
`... that Plaintiffs failed to sustain the burden of proof required of them in showing that they are entitled to any relief, and further failed to show by the greater weight of the evidence the extent of damages to Plaintiffs, if any... .'"[1]
Upon the basis of the foregoing facts, the District Court held as follows:
"The trial judge apparently found for the defendants on the ground that the plaintiffs had not shown the value of the improvements placed on the land by the defaulting lessee, Rockett Builders, Inc., in order that such might be set off against the amount of the subrogation claim. In support of the trial judge, the defendants suggest that the plaintiffs' position was analogous to that of a mortgagee who, after having acquired title to the mortgaged realty by foreclosure, seeks a deficiency judgment. Such a creditor, according to defendants, would be required to credit against the debt the value of the security reduced to possession by foreclosure. We think this analogy is not appropriate. It ignores the fact that the plaintiffs were the owners of the security (subject to a leasehold estate) at the time it was mortgaged and acquired possession thereof not by foreclosure, but by termination of the lease. If the contention of the plaintiffs and the position of the trial court is correct, the equitable remedy of subrogation would be effectively destroyed for anyone who permits his own property to be used as security for the debt of another.
"Under the facts of this case, we fail to see how the plaintiffs would be unjustly *6 enriched by receiving both the improvements and reimbursement for the monies paid to American Federal. Unjust enrichment involves receipt of more than one is due, as where a debt is paid twice. The plaintiffs had a legal right to the improvements by virtue of their lease with Rockett Builders, Inc. They had a separate and additional right to enforce American Federal's note by virtue of their payment of the same to protect their real estate from foreclosure. Furthermore, if unjust enrichment were a factor to be considered in this case, it would have been an affirmative defense or an avoidance as to which the burden of proof would rest on defendants. Our scan of the record  which of necessity was directed by the briefs of the parties  indicates that there was no competent substantial evidence of unjust enrichment in that there appears no substantial evidence as to the value of the improvements to the plaintiffs. Compare Woodhull v. Rosenthal, 1875, 61 N.Y. 382, 31 N.Y.App. 120."[2]
In their petition, petitioners allege that:
"The foregoing ruling of the District Court is in conflict with other decisions in this State for the following reasons:
`(a) Under the doctrine of equitable subrogation, the Plaintiffs stood in the shoes of the mortgage creditor, American Federal. Furlong v. Leybourne, 171 So.2d 1 (Fla. 1964). Thus, the Plaintiffs could acquire no greater rights than the rights of the creditor. Bradford v. Marvin and Martin, 2 Fla. 463 (Fla. 1849).
`(b) The creditor would not be allowed to take possession of the property which the debt was created to pay for and also sue for the full amount of the debt. Romarch [Romanach] v. A.J. Armstrong, 172 So.2d 444 (Fla. 1965); American Process Co. v. Florida White Pressed Brick Co. [56 Fla. 116], 47 So. 942 (Fla. 1908); Helton v. Sinclair [93 Fla. 1121], 113 So. 568 (Fla. 1927); Voges v. Ward [98 Fla. 304], 123 So. 785 (Fla. 1929); Kaufman [Kauffman] v. International Harvester Co. [153 Fla. 188], 14 So.2d 387 (Fla. 1943); Baer v. General Motors Acceptance Corp., [101 Fla. 913], 132 So. 817 (Fla. 1931). By allowing the plaintiffs to exercise their full individual rights to possess the encumbered property that the debt was created to acquire in addition to the rights of the Mortgagee, American Federal, the Plaintiffs are being allowed to acquire much greater rights than the creditor possessed. The rights of American Federal were to sue on the note, or to apply the security to satisfaction of the debt and sue for any deficiency between the fair market value of the security received and the amount of the debt. Grace v. Hendricks [103 Fla. 1158], 140 So. 790 (Fla. 1932).'"
The District Court found that the improvements made by the tenant did not substantially increase the value of the property. The record shows that the buildings cost $71,179.04, and development of a miniature golf course cost approximately $15,000.00. These improvements were strictly for use by the tenant, and the District Court found "no competent substantial evidence of unjust enrichment in that there appears no substantial evidence as to the value of the improvements to the plaintiffs."
Although the lease provided that all improvements added to the land would belong to the lessors upon being placed thereon, we are of the opinion that if, in a similar situation, the lessors were to receive substantial unjust enrichment, a court of equity could consider same, and reduce the damages payable to the lessors accordingly. As the District Court properly observed, the duty to plead and prove such unjust enrichment is on the defendants, since "it would have been an affirmative defense or *7 an avoidance as to which the burden of proof would rest on defendants".
This Court is aware that some buildings would add to, and others would diminish, the actual value of the real property. For example, an automobile "dealership", with its necessary showroom, inventory, and service areas, could not be easily converted to other uses, while a "standard" retail merchandise store could generally be converted to a wide variety of uses. If it had been demonstrated, in this instance, that the lessors sold their property for a greater price, because of the new buildings and golf course, than they could have received from the naked land, the chancellor could have properly considered that fact. No such proof appears here.
There is a presumption that the parties signing legal documents are competent, that they mean what they say, and that they should be bound by their covenants. This being so, it is only in those cases in which the unjust enrichment is substantial, and obviously inequitable, that courts should grant relief to those who break their valid contracts.
The foregoing petition for writ of certiorari reflected apparent jurisdiction in this Court. We issued the writ and have heard argument of the parties. Upon further consideration of the matter, we have determined that the cited decisions present no direct conflict as required by Article V, Section 3(b)(3) of the Florida Constitution, F.S.A. Therefore, the writ must be and is hereby discharged.
It is so ordered.
ROBERTS, Acting C.J., ADKINS and McCAIN, JJ., and GWYNN, Circuit Judge, concur.
ERVIN, J., dissents with opinion.
DEKLE, J., dissents and concurs with ERVIN, J.
ERVIN, Justice (dissenting):
It appears from the factual statement in the District Court opinion that the Fortenberrys, as lessors, executed a 99-year lease to Rockett Builders, Inc. The lease provided any building or permanent improvement on the premises would become the property of the Fortenberrys on default of the lease. Coupled, however, with this provision was one to the effect that if Rockett Builders, Inc. desired to mortgage the premises, the Fortenberrys, without assuming liability for the debt, would join in the execution of the mortgage. Rockett executed a note secured by a mortgage covering the leased premises to American Federal Savings and Loan Association in the amount of $53,000, payable in monthly installments. The note was endorsed by Mandell, et al. The Fortenberrys joined in the execution of mortgage in accordance with the requirements of the lease.
The note went into default and the Fortenberrys paid it off in 1968 in the sum of $58,142.87, principal and interest, to avoid a foreclosure of the mortgaged premises by the mortgagee. Contemporaneously Rockett Builders, Inc. went into default on the lease and thereupon the Fortenberrys retook possession of the leased premises.
Having paid off the mortgage note indebtedness, the Fortenberrys, as subrogees thereof, sued Mandell, et al., the accommodation endorsers of the mortgage note. That is to say, the Fortenberrys stepped into the shoes of the mortgagee, American Federal Savings and Loan Association. The District Court described the transaction, as follows:
"The plaintiffs [Fortenberrys] payment of the note to the creditor  American Federal  entitled plaintiffs to subrogation in equity to the position of the creditor. It follows, therefore, that plaintiffs succeeded to all rights of American Federal, including the right to recover a judgment on the note."
*8 The question here is what rights, if any, did the accommodation endorsers succeed to under the related circumstances.
Up to this point I agree with this reasoning and analogy of the District Court. However, from this point on the District Court rejects any counterbalancing analogous equitable rights of the accommodation endorsers as debtors to any credit that might have accrued had the mortgaged premises been foreclosed to liquidate the mortgage debt. The District Court states that
"the plaintiffs [Fortenberrys] were the owners of the security (subject to the leasehold estate) at the time it was mortgaged and acquired possession thereof not by foreclosure, but by termination of the lease."
The fee simple title to the land covered by the lease was mortgaged, not the leasehold. The accommodation endorsers knew that the Fortenberrys had joined in the execution of the mortgage on this land as per their express agreement to do so. Thus insofar as the accommodation endorsers of the mortgage note were concerned, they knew the mortgage note they endorsed was secured by the specific mortgaged premises, resort to which could be made by foreclosure or otherwise to discharge the debt. They had no duty or obligation to prevent default of the lease, nor were their rights as debtors in any way subject to its terms. It was also immaterial to them whether the Fortenberrys in their subrogation status foreclosed the mortgage, received a deed to the mortgaged land in lieu of foreclosure, or retook it by virtue of the default of the lease. To the endorsers it was a normal mortgage transaction and the rule "once a mortgage, always a mortgage" (22 Fla.Jur., Mortgages § 3) applied, affording them the right to receive whatever credits or benefits might accrue to them from a final disposition of the mortgage security when they were charged with liability for the mortgage indebtedness.
Under the stated circumstances the endorsers were entitled to whatever reciprocal rights a mortgagor's guarantors or accommodation endorsers are entitled to under Florida law when they are held responsible for the mortgage debt, irrespective of the default of the 99-year lease. Especially is this so when it is recalled the Fortenberrys joined in the execution of the mortgage and agreed it would be security for the mortgage debt.
When the Fortenberrys undertook to recover from the accommodation endorsers under the doctrine of subrogation, the endorsers suggest their position was
"analogous to that of a mortgagee who, after having acquired title to mortgage realty by foreclosure, seeks a deficiency judgment. Such a creditor, according to defendants, [endorsers] would be required to credit against the debt the value of the security reduced to possession by foreclosure." 271 So.2d, text 172.
I think this position is essentially correct and that absolute denial thereof created conflict with such cases as Bradford v. Marvin and Marvin, 2 Fla. 463 (Fla. 1840), holding that a subrogee can acquire no greater rights than that of the creditor and Furlong v. Leybourne (Fla. 1964) 171 So.2d 1, holding that a subrogee stands in the shoes of the mortgage creditor.
The rights of American Federal (and similarly those of its subrogees, the Fortenberrys) included the right to sue on the mortgage note, or to apply the security to satisfaction of the debt and sue for any deficiency between the fair market value of the security received and the amount of the debt. Grace v. Hendricks, 1932, 103 Fla. 1158, 140 So. 790.
The record reflects that Mandell, et al., the endorsers, by their pleading raised the issue that they were entitled to such credit or consideration that may have resulted from the enhanced value of the mortgaged premises upon which lessees had erected certain buildings using funds derived from the loan from the American Federal Savings and Loan Association. There was evidence that after the Fortenberrys retook *9 possession they sold the land and improvements thereon for approximately $90,000.
The District Court by its reversal on the sole point the default of the lease wiped out the security as a source of any, possible relief to the endorsers, precluded consideration of any equitable relief or credit for them arising from the alleged enhanced value of the mortgage premises, despite the fact the accommodation endorsers by their obligation were not bound or subject in any way by the terms of the lease. They were subject to a suit on the note by mortgagee or its assigns or subrogees, with the concomitant right to equitable relief under legal principles relating to deficiency judgments.
It is quite clear that when the Fortenberrys, as subrogees, proceeded to sue the accommodation endorsers they in effect were seeking the equivalent of a deficiency judgment inasmuch as they were entitled by the default of the lease to retake the mortgaged premises and the improvements thereon. In this situation, principles of equity  as well as the rule established by F.S. Section 702.06, F.S.A.  authorized the trial judge in his sound discretion to determine the portion or extent of deficiency to be allowed. It is quite apparent from the record that it was on this basis that the trial judge proceeded as he did. See 22 Fla.Jur. Mortgages (N. deficiency) § 412 to 425, Inc.; Etter v. State Bank, 1918, 76 Fla. 203, 79 So. 724; Mabson v. Christ, 1938, 96 Fla. 756, 119 So. 131; Grace v. Hendricks, supra; Builders Finance Co. v. Ridgewood Homesites, Inc., Fla.App. 1963, 157 So.2d 551; Maudo, Inc. v. Stein, Fla. App. 1965, 171 So.2d 403; Frumkes v. Mortgage Guarantee Corp., Fla.App. 1963, 173 So.2d 738; Matlack v. Owen, Fla. App. 1966, 181 So.2d 602.
The majority opinion begs the question of the rights of Petitioners as deficiency judgment debtors. It does not directly agree with the District Court that the Fortenberrys had both lessor lease default rights and subrogation rights while Mandell et al. had no rights as deficiency judgment debtors. The majority's opinion speaks of unjust enrichment, indicating it is an affirmative defense that should have been pleaded and proved. This was an extraneous issue injected by the District Court and bought by this Court in a round about way. The true issue undecided by this Court was whether the Petitioners were entitled to consideration as deficiency judgment debtors. The trial judge thought they were, and I agree.
The decision of the District Court should be quashed with direction that the cause be tried anew under equitable principles applicable in cases where a deficiency decree is sought. I do not feel it necessary to pass on pleading and evidentiary questions, including which party has the burden of proof, believing that the case should be tried de novo under rules applicable when a deficiency judgment is sought. Cf. Colmes v. Hoco, Inc. of Dade County, Fla.App. 1963, 152 So.2d 524.
DEKLE, J., concurs.
NOTES
[1] 271 So.2d at 171-172.
[2] Id. at 172-173.