390 So.2d 370 (1980)
RODEWAY INNS OF AMERICA, an Arizona Corporation, Rodeway Inns of America, a Nevada Corporation; and Rodeway Inn-Clearwater, Ltd., a Florida Limited Partnership, Appellants,
v.
Robert E. ALPAUGH and Kathleen P. Alpaugh, His Wife; Charles W. Birdsong, Sr., and Dorothy Birdsong, His Wife; and E. Eugene Sitton and Donna L. Sitton, His Wife; and Abs, Inc., Appellees.
No. 79-1452.
District Court of Appeal of Florida, Second District.
October 10, 1980.
Rehearing Denied November 26, 1980.
J. Philip Plyler of Hill, Hill & Dickenson, Tampa, for appellants.
*371 Milton D. Jones of Wightman, Weidemeyer, Jones & Turnbull, Clearwater, for appellees.
OTT, Judge.
The judgment below holds appellant liable on a mortgage which it had placed on the premises in order to obtain financing to construct a motel thereon, even though appellee owners had evicted appellant and taken possession. We affirm the judgment, but deem it worthwhile to explain why that result was proper.
The pertinent facts are quite simple. Rodeway leased appellees' land for 55 years for the purpose of constructing and operating a motel thereon. In order for Rodeway to obtain construction financing, appellees agreed to become signatories to a mortgage on the premises, which provided in pertinent part:
20. The undersigned by their joinder in this mortgage do hereby subordinate and make inferior any and all rights they have or in the future may have by virtue of any lease agreement by or between them on above described property and covenant that no parties are in possession other then mortgagors.
21. The Owner joins in the execution of this mortgage solely for the purpose of constituting this mortgage a first lien upon the fee simple title to the premises herein described and the Owner shall have no personal liability for the payment of any sums secured by this Mortgage and no personal liability or personal judgment may ever be taken against the Owner by reason of its execution hereof.
Pursuant to and consonant with that concession by appellees, Rodeway agreed in the lease (as amended) that:
Article X
Remedies

Section 1. Defaults. The LESSOR may terminate this lease or may evict the LESSEE from the premises and re-let the same for the account of the LESSEE upon the happening of any one of the following events: (a) failure of the LESSEE to pay the rent ...; (b) failure to pay real estate taxes ...; (c) failure to pay the monthly mortgage installment... .

Section 2. Re-entry. Upon the occurrence of any defaults hereinabove provided for or otherwise provided by law, whether the LESSOR elects to terminate this lease or evict the LESSEE and retake the premises for the account of the LESSEE, the LESSOR shall have the right to re-enter the premises.... Upon and after such re-entry by the LESSOR the LESSEE shall remain liable to pay the mortgage... .
Due to various local and national problems in the economy, the motel was not a success. Rodeway defaulted in payment to suppliers, to appellees for rent, and on the mortgage to the construction financier. Appellees terminated the lease, regained possession of the premises with Rodeway's acquiescence, paid the delinquent operating expenses and brought the mortgage current. They then brought this action and obtained judgment for reimbursement of all such payments, and for collection of the rent accruing prior to the termination of the lease.
This appeal by Rodeway attacks only the portion of the judgment granting reimbursement for the mortgage payments which fell due after the termination of the lease. What Rodeway does not contend on this appeal is as revealing and significant as what it does contend. First, it makes no contention at any time that the provisions of the lease are in any way ambiguous. Moreover, although it advances many reasons for avoiding its obligation to satisfy the mortgage regardless of appellees' termination of the lease and repossession of the premises, Rodeway never once denies that the literal language of the lease requires it to do so. Equally significant is the fact that Rodeway has never claimed that its officers who negotiated and signed the lease were in any way misinformed or otherwise laboring under a mistaken impression of the effect of such language. Moreover, *372 Rodeway has never denied that the lease was terminated. In fact, that was expressly asserted to be so in the affirmative defenses Rodeway attempted to raise in the trial court.
In the absence of contrary agreement, a landlord whose tenant has defaulted in payment of rent can re-enter and dispossess the tenant. §§ 83.05 et seq., Fla. Stat. If there is a lease, however, its provisions are conclusively controlling, and a court will not substitute its judgment for that of the parties by rewriting that lease.[1]S.H. Kress & Co. v. Desser & Garfield, Inc., 193 So.2d 192 (Fla. 3d DCA 1966). Although the Florida Residential Landlord & Tenant Act (§§ 83.40 et seq., Fla. Stat.) permits courts to override the terms and conditions of residential leases if they are deemed inequitable, there is no such control over business leases. As to those, the rule governing contracts in general is applicable-a party will not be relieved of obligations deliberately undertaken merely because they prove burdensome or otherwise improvident. Nussey v. Caufield, 146 So.2d 779 (Fla. 2d DCA 1962).
To counteract that general rule, Rodeway relies almost exclusively on Mandell v. Fortenberry, 290 So.2d 3 (Fla. 1974) for the proposition that the claims of a landlord who retakes possession of premises which have been improved by the defaulting tenant are subject to setoff, under the equitable doctrine of unjust enrichment, for the net value added to the repossessed premises by the improvements. There is dictum[2] in Mandell to that effect, but it must be noted that (1) the landlord did win that lawsuit and (2) the landlord's theory of recovery was predicated on the doctrine of equitable subrogation, which explains the inapplicability of the normal rule that equitable defenses are not cognizable in actions at law unless they would suffice to avoid the judgment if one were obtained. Klein v. G.F.C. Corp., 103 So.2d 120 (Fla. 1958).
A shorter answer to any reliance on Mandell, however, is that the contract there did not specifically grant the relief sought, as does the one here. Rodeway agreed to pay the mortgage even though appellees terminated the lease and regained possession. The lease in Mandell contained no such provision. It is hardly surprising, under those circumstances, that the landlord found his equitable action met by the equitable defense of unjust enrichment-the inequity of allowing enforcement of the tenant's continuing obligation on the mortgage with no offsetting credit for improvements which might have enhanced the value of the premises. There is no reasonable predicate for concluding that such a defense has validity where, as here, the agreement of the parties specifically and unequivocally dictates precisely that result.
The lease before us provided appellees with two alternative remedies when Rodeway breached the lease-terminate and reenter for their own benefit, or evict Rodeway and relet for Rodeway's account. In either event, (1) appellees had a right to re-enter and (2) Rodeway remained obligated to pay the mortgage. Those provisions are in no way inconsistent or ambiguous-or in any way contrary to Florida law or public policy. We agree with the able trial judge, who ruled that the language in question was "as clear as spring water", and it is significant that Rodeway itself has never professed to find any ambiguity in that language.
The applicability of Coast Federal Savings & Loan Ass'n. v. DeLoach, 362 So.2d 982 (Fla. 2d DCA 1978), on which Rodeway relies, is flawed by the fact that there the landlord sought two remedies that are patently incompatible, i.e., repossession for his *373 own account and continued liability of the tenant for the accruing rent. There is no such inconsistency here-appellees terminated the lease and made no claim against Rodeway for further rent. They merely sought to enforce Rodeway's explicit promise to satisfy the mortgage even if the lease were terminated and appellees took over the facilities constructed with the proceeds of the loan for which the mortgage was given.
For reasons which the parties deemed compelling at the time, they agreed that appellees would not be responsible for the improvements Rodeway planned to construct. The lease clearly reveals Rodeway's awareness that such provision could result in an ordinarily anomalous situation-loss of the improvements without release from the obligation to pay for them. Rodeway was under no compulsion to proceed with the project under those conditions. It chose to do so of its own free will and volition, and it would be naive to think that it had no pecuniary motive or incentive for doing so. The trial court properly refused to tamper with the solemn commitments of astute business men.
In our opinion the terms of the lease, negotiated by the parties in good faith and with full awareness of the legal consequences, fully support the conclusion reached by the trial court. The judgment is affirmed.
SCHEB, C.J., concurs.
CAMPBELL, J., dissents with opinion.
CAMPBELL, Judge, dissenting.
I must respectfully dissent. The issue here is not whether the value of the improvements by appellants-lessees should be set off against the amount remaining due on the mortgage, but rather whether appellees-lessors should be allowed to collect the mortgage payments from a third person lessee after termination of the lease with appellants and also require appellants to pay the amounts due as mortgage payments after termination under the provisions of the lease, thereby resulting in a windfall to appellees in the amount of the double payment of some $325,214.05.
A more detailed recitation of the facts of the case than is presented by the majority is necessary to adequately explain this dissent.
Some two and one-half years after completion of the motel, appellees gave appellants notice of default and intent to terminate the lease, alleging failure to keep rent and mortgage payments current. Negotiations between the parties resulted in an agreement whereby appellants cured the defaults then existing and an "Amendment to Lease" was executed by the parties. The remedies provision of the amended lease provided that upon failure to pay the rents or mortgage when due or upon other specified defaults, the appellees could terminate the lease or evict appellants from the premises "and re-let [sic] the same for the account of the LESSEE." The amended lease further provided that whether the appellees elected to terminate the lease or evict appellants and retake the premises for the account of appellants, appellees would have the right to re-enter and "Upon and after such re-entry by the LESSOR the LESSEE shall remain liable to pay the mortgage... ."
Approximately six months later appellees again notified appellants of their default as a result of failure to keep rent and mortgage payments current. Appellees expressed their intent to terminate the lease and immediately re-enter possession of the motel property. Appellants acquiesced and allowed appellees to retake possession. From that point on, the appellees operated the motel or leased it to third parties to operate.
Appellees claimed damages for the monthly mortgage payments that were made after their re-entry with ten percent interest on those payments.
Appellants' first answer and affirmative defenses raised defenses of: Failure to state a cause of action, waiver of appellees' rights under the lease by reason of a novation between the parties, estoppel by reason of unjust enrichment if the claim for damages *374 was allowed, and estoppel for failure to properly mitigate damages. No specific facts were alleged to support any of the defenses. Appellees' motion to strike those defenses was granted on the grounds that the first defense was actually a motion to dismiss and was not specifically pled as required by Florida Rule of Civil Procedure 1.140(b), and that the other defenses failed to state with particularity any facts to support them.
A first amended answer and affirmative defense was thereafter filed. The court also struck those amended defenses with leave to amend. The orders in the case up to this point were entered by one trial judge and thereafter the proceedings in the trial court were presided over by another judge.
Appellants then filed a second amended affirmative defense. They alleged that with their acquiesence, appellees took possession of the motel and thereafter operated it themselves or leased it to third parties, receiving therefrom more than sufficient funds to pay mortgage payments and all other operational costs of the motel. Appellants alleged that appellees would be unjustly enriched if, in addition to the funds they received from the motel operation which enabled them to make the mortgage payments, they were also allowed to recover from appellants the amount of those mortgage payments together with ten percent interest. The trial court struck this second amended affirmative defense without leave to amend on the basis that the defense of unjust enrichment was legally insufficient in view of the express provisions of the lease.
Subsequently, appellants filed a motion to allow them to plead affirmative defenses and a counterclaim. The essence of the defenses sought to be raised by appellants were that negotiations and communications between the parties resulted in an oral agreement providing that if appellants acquiesced in appellees' termination and immediate occupancy, appellants would not thereafter have any continued liabilities; that appellants relied on these representations and acquiesced in appellees' re-entry and appellees, therefore, should be estopped from claiming the full amount of the mortgage payments thereafter made; that appellants were entitled to a set-off and counterclaim against appellees' claims in the amount of the value of the assets left on the premises by appellants; that appellees' claim for the mortgage payments was an action for specific performance and barred by the statute of limitations; that the claims for damages occurring after re-entry should have been mitigated by the appellees; and finally, that to enforce the provisions of the lease requiring appellants to pay the mortgage in addition to the receipt by appellees of income from the motel operations to pay the mortgage would constitute an unenforceable penalty.
The trial court granted appellants' motion to add these defenses and counterclaim, but also granted appellees the right to test the sufficiency of the new defenses and counterclaim by motion.
The trial court then struck those final amended defenses and counterclaim as a result of appellees' motions to strike and dismiss, holding the defenses were legally insufficient as an attempt to alter the terms of the lease by parol evidence, and further that failure to raise them initially caused prejudice to the appellees and they had, therefore, been waived or abandoned.
The first defenses of appellants may not have been factually sufficient, but they at least alerted the appellees to the nature of the claimed defenses, as did the second amended affirmative defenses. The thrust of the factual allegations consistently pled by appellants in their several defensive pleadings, however labeled, was directed toward showing that the motel had been self-sustaining since appellees' re-entry and that appellees, by operation of the motel themselves or by leasing it to third parties, had received more than sufficient funds to pay the mortgage payments and all other costs of the motel operation and appellants, therefore, should be entitled to credit for the amount of those funds against any continued liability they might have to pay the *375 mortgage payments. Although each of appellants' defenses had been struck for various reasons, it cannot reasonably be said that the appellees were surprised or prejudiced when those same defenses were raised again by appellants' final amended defensive pleadings in more detail. Note that after the trial court struck these final defenses and before the nonjury trial some three months later, the court allowed appellees to amend and supplement their claim for damages. The court at the same time denied appellants any opportunity to proffer at the trial evidence that would pertain to any of its affirmative defenses stricken by the court. Since I cannot conceive how appellees could have been surprised or prejudiced by these defenses, I would find that the trial court erred in dismissing them on grounds of waiver and abandonment or prejudice to the appellees.
The other ground for the court's striking the defenses was that they were legally insufficient. The trial court found that appellants' final amended pleading was an attempt to vary the terms of the lease agreement by parol evidence and, thus, legally insufficient. If allowed to have been pled and proved, however, appellants' allegations could have shown the intent of the parties after termination and upon the re-entry and subsequent reletting by the appellees rather than the intent of the parties in entering into the lease agreement. When a lessor re-enters leased premises, the question of whether its re-entry and subsequent use of the premises is for its own account, for the account of the lessee, or is an outright termination and abandonment of the lease, is a question of fact for a jury. Hyman v. Cohen, 73 So.2d 393 (Fla. 1954); Diehl v. Gibbs, 173 So.2d 719 (Fla. 1st DCA 1965).
The remedies provision of the amended lease seems to be the primary villain that causes the struggles of the parties in their pleadings, the efforts of the trial court to untangle them, and my concern in deciding whether appellants' defenses were properly struck for being legally insufficient. In examining these lease provisions, it appears that the original lease provides only a single remedy or option to the appellees upon default by appellants; appellees could terminate. They then had the option to re-enter and remove all persons and property from the premises, in which case appellants would remain liable upon the mortgage to the extent appellees would be required to repay the same "and hold the LESSOR harmless in respect thereto."
There appear to be two alternatives available to appellees under the terms of the lease as amended. They could either terminate or evict appellees and relet for the account of appellants. Whichever option was chosen, the amendment provided that upon appellees' re-entry appellants would be required to pay the mortgage. Under Florida law, it is inconsistent to provide for a lessor to re-enter and relet for the account of the lessee and yet require the lessee to remain obligated to pay the mortgage in full without an accounting by the lessors for sums received by such re-entry and reletting. The amended lease provision here is, thus, vague and ambiguous regarding the intent of the parties after a reletting by the appellees following a re-entry.
Florida adheres to the minority view that upon an outright termination of a lease without assuming to do anything further, a lessor has no duty to mitigate damages by reletting or otherwise. Rather than adhering to the majority view that a lessor always has a duty to mitigate, Florida instead recognizes that a duty arises only as a result of which one of three alternative courses of action a lessor chooses upon a breach by a lessee. These alternatives were stated by this court in Coast Federal Savings and Loan Association v. DeLoach, 362 So.2d 982, 984 (Fla. 2d DCA 1978):
The lessor may treat the lease as terminated and retake possession for his own account, thus terminating any further liability on the part of the lessee; or the lessor may retake possession of the premises for the account of the lessee, holding the lessee liable for the difference between rental stipulated to be paid under *376 the lease agreement and what, in good faith, the lessor is able to recover from a reletting; or the lessor may stand by and do nothing, holding the lessee liable for the rent due as it matures, which means all remaining rent due if there is an acceleration clause and the lessor chooses to exercise the right to accelerate. Williams v. Aeroland Oil Co., 155 Fla. 114, 20 So.2d 346 (1944); Jimmy Hall's Morningside, Inc. v. Blackburn & Peck Enter., Inc., 235 So.2d 344 (Fla. 2d DCA 1970).
Clearly, pursuant to both Florida law and the terms of the lease, appellees could have terminated and assumed to do nothing further and appellants would have been liable for the mortgage payments as they became due. Appellees did not elect that alternative. They elected to terminate the lease and re-enter for their own use and benefit. That alternative is not specifically stated in the lease, though it is an alternative recognized and discussed in Coast Federal Savings. There, in discussing that alternative and the one specifically provided for in the lease here, re-entry for the account of appellants, this court said:
Either of the first two choices excludes the third. By retaking possession either for his own account or for the account of the lessee, a lessor loses the right to recover the full amount of remaining rental due on the basis of an acceleration clause. The two positions are inconsistent. Geiger Mutual Agency, Inc. v. Wright, 233 So.2d 444 (Fla. 4th DCA 1970); Jimmy Hall's Morningside, Inc. v. Blackburn & Peck Enter., Inc., supra. If the lessor retakes possession for the account of the lessee, two results follow. First, the lessor acquires a duty to exercise good faith in attempting to relet the premises, and second, any rentals received by the lessor as a result of the reletting must be deducted from the balance of rent due from the lessee. Kanter v. Safron, [sic] 99 So.2d 706 (Fla. 1958); Jimmy Hall's Morningside, Inc. v. Blackburn & Peck Enter., Inc., supra.

362 So.2d at 984. Even in Florida, it is only when the lessor elects to terminate and do nothing more, that no duty to mitigate arises. Lessees in that event are then liable to pay in full whatever the lease requires. Appellees here say they did not elect that alternative, but instead the alternative not specifically provided for by the lease. The problem here arises because the lease does not specifically address the rights of the parties in light of appellees' stated election to terminate and re-enter for their own use and benefit. Though appellees could have elected an option which would have required no duty on their part to mitigate, they chose instead an option not specifically provided for by the lease but which would normally, under Florida law, raise such a duty. Appellants' position here goes even another step, for they argue that whether or not there arose a duty to mitigate, appellees did in fact choose an alternative that mitigated the damages. It is in that light that the legal sufficiency of appellants' pleadings must be examined.
The Florida courts have not specifically addressed the rights of a lessee when there arises no specific duty to mitigate, but the lessor chooses to take actions upon re-entry that in fact do mitigate its damages. A case close in point, however, is Kanter v. Safran, 99 So.2d 706 (Fla. 1958). There the supreme court held that though lessees had deposited a specific sum as a security fund to be forfeited upon a failure to pay rents, when the lessors elected to relet the premises for the lessees' account, the lessors' claim for damages would be measured by the rents agreed to be paid and what in good faith the lessors are able to recover from a reletting. The court held:
The measure of general damages was abundantly clear and to set them off against the security deposit it was incumbent upon the lessors to prove them. As part of this proof it was necessary for the lessors to establish that they had in good faith attempted to recoup what they could, consistent with their own interests as well as those of the defaulting lessees. (Emphasis added.)
Id. at 707-08.
This court has decided two cases which aid in the determination of that question. *377 The liability of the lessees upon termination in each of these cases is analogous to the liability of appellants here. In both cases, upon termination the lessees had an obligation to pay the full amount of accelerated rent for the remaining term of the lease. Here the obligation is instead to continue to make mortgage payments for the full period of the mortgage.[1]
The first of the two cases is Jimmy Hall's Morningside, Inc. v. Blackburn & Peck Enterprises, Inc., 235 So.2d 344 (Fla. 2d DCA 1970), wherein the lessee who had assigned the lease to a third party refused to accept the premises back or pay the rent after the assignee abandoned the premises. The lessor relet the premises and also brought action against the lessee for the full amount of the accelerated rent without allowing credit for the amounts received by the reletting. This court recognized the three alternatives available in Florida to a lessor on a breach by lessee. It then held that though rent acceleration clauses are valid and enforceable, it is error to allow a lessor to choose the option of re-entering and reletting without accounting for the amounts received from the reletting so as to credit them against the amounts due as accelerated rents.
This court subsequently decided Coast Federal Savings. The lessor there appealed, citing as error the failure of the trial court to award the full amount of accelerated rents. The lessor had brought suit to recover accelerated rent payments after the lessee had vacated and ceased paying rent before the end of the lease term. The trial court reduced by eighty percent the amount of accelerated rents the lessor could recover because of its failure to use reasonable methods to mitigate. In reviewing the trial court's judgment, this court recognized the three alternatives available in Florida to a lessor on breach by the lessee. The trial court had not made a specific finding in its final judgment that the lessor had in fact retaken possession and relet. Without stating a reason, the final judgment simply reduced the accelerated rents the lessee would be required to pay. This court relinquished jurisdiction back to the trial court for specific findings as to why it was reducing the lessee's liability for the full amounts of accelerated rents. If the trial court had determined only an outright termination and nothing more, the lessee would be liable in full. If it found that the lessor chose to retake possession for the account of the lessee, then it could properly find the lessee only liable for the difference between the full rental payments as accelerated and the amounts that in good faith the lessor should have or did recover from reletting. However, if the trial court reduced the liability of the lessee, not upon election of an option by the lessor requiring mitigation but upon a duty of the lessor to mitigate absent a choice which raised the duty, then the trial court committed error.
Both parties here cite Mandell v. Fortenberry, 290 So.2d 3 (Fla. 1974), as support for their positions. In Mandell, our supreme court considered on certiorari a decision of the District Court of Appeal, Fourth District,[2] reversing a trial court's judgment. The facts bear a similarity to those before us here. The plaintiffs in the trial court owned land which they leased to defendants. Defendants secured a loan to finance improvements to be placed on the land. Plaintiffs executed the mortgage securing the loan for the sole purpose of imposing the mortgage lien on the real property and not to assume any liability on the mortgage. The defendants defaulted on the note and mortgage which the plaintiffs then paid. The note was assigned to the plaintiffs and after they retook possession of the leased premises they sued for the full amount of the note. In awarding judgment for the defendants, the trial court found that the plaintiffs had not sustained their burden of *378 proving damages, since they had not shown the value of the improvements placed on the leased premises in order that their value might be set off against their claim for damages. It does not appear from either the supreme court decision or the decision of the District Court of Appeal, Fourth District, that the defendants affirmatively pled that the plaintiffs were unjustly enriched by reason of the value of the improvements placed by defendants on the leased premises. Both courts held that unjust enrichment was an affirmative defense which must be specifically pled and proved by the defendant.
However, the decisions of both the supreme court court and the district court in Mandell appear to more strongly support appellants' position that the trial court was in error in striking its defenses. The supreme court held:
Although the lease provided that all improvements added to the land would belong to the lessors upon being placed thereon, we are of the opinion that if, in a similar situation, the lessors were to receive substantial unjust enrichment, a court of equity could consider same, and reduce the damages payable to the lessors accordingly. As the District Court properly observed, the duty to plead and prove such unjust enrichment is on the defendants, since "it would have been an affirmative defense or an avoidance as to which the burden of proof would rest on defendants".
.....
If it had been demonstrated, in this instance, that the lessors sold their property for a greater price, because of the new buildings and golf course, then they could have received from the naked land, the chancellor could have properly considered that fact. No such proof appears here.
There is a presumption that the parties signing legal documents are competent, that they mean what they say, and that they should be bound by their covenants. This being so, it is only in those cases in which the unjust enrichment is substantial, and obviously inequitable, that courts should grant relief to those who break their valid contracts.
290 So.2d at 6-7.
It appears here that the appellants' construction of the motel on the previously vacant property placed appellees in a better position to relet the premises and thereby reduce their losses or increase their profits. Appellees could conceivably receive from their operation of the motel or from subletting it sums sufficient to completely pay back the mortgage and pay for all operational costs and lost rents. In that event, appellees, without cost to them, would have their then unencumbered real property increased by the value of the motel. The judgment being reviewed here was for the amount of the mortgage payments, principal and interest, appellees made after re-entry and through the final hearing. Even if the mortgage is completely paid off without costing appellees anything, their position, sustained by the trial court's judgment, still allows them to collect from appellants the full amount of the mortgage unpaid at the time of appellees' re-entry plus ten percent interest. The trial court's judgment was inevitable once the court struck appellants' defenses.
As are rent acceleration clauses, the provisions of the lease agreement here are closely akin to a provision for stipulated or liquidated damages. If the amounts stipulated in an agreement to be forfeited as liquidated damages are so grossly disproportionate to any damages that actually follow or that might reasonably follow a breach, they are considered to be intended only to insure no detriment arising by lack of the performance rather than as liquidated damages. Hyman v. Cohen, 73 So.2d 393 (Fla. 1954). When actual damages contemplated by the parties upon a breach are susceptible of ascertainment, and if the stipulated amount is disproportionate to the actual damages, it will be regarded as a penalty. The purpose of damages in a breach of contract action is to place the injured party in the same financial position he would have occupied if the contract had been fully performed. Juvenile Diabetes *379 Research Foundation v. Rievman, 370 So.2d 33 (Fla. 3d DCA 1979).
In Stenor, Inc. v. Lester, 58 So.2d 673, 675 (Fla. 1952), the supreme court in stating that rule held:
The prime factor is whether the sum named is just compensation for the damage resulting from breach. Though it is proper for parties to provide in advance for a sum to be paid or retained as liquidated damages, equity will not permit one seeking its aid to retain payments as liquidated damages in excess of his actual damages. Taylor v. Rawlins, 1905, 90 Fla. 621, 106 So. 424.
Appellants alleged facts in their affirmative defenses which tend to show that appellees regained possession for their own use or for the purpose of reletting, or for the account of appellants. They alleged that in either event it would constitute a penalty to allow appellees to keep the sums received from their own use or from reletting and to additionally require appellants to make the mortgage payments under the lease without an accounting and a credit for those sums received by the appellees. As the supreme court said in Mandell, even though parties are presumed to be bound by the covenants of their contracts, there are still "those cases in which the unjust enrichment is substantial, and obviously inequitable, that courts should grant relief to those who break their valid contracts." 290 So.2d at 7. At least a party ought to be allowed to plead such a defense where the parties do not act precisely within the express terms of the contract or where the terms of the contract are ambiguous.
I would conclude, therefore, that the court below erred in striking those defenses on the grounds of waiver and abandonment and legal insufficiency. If those defenses had been allowed, appellants should also have been granted their request for trial by jury. I would reverse and remand.
NOTES
[1] We are not unmindful that Rodeway claims that the parties themselves, in effect, rewrote the lease by an oral novation at the time appellees re-entered the premises. In our opinion the trial court properly struck that affirmative defense. The release, surrender or rescission of a lease for a term in excess of one year must be in writing signed before witnesses. § 689.01, Fla. Stat.; 11 Fla.Jur.2d 469, Contracts § 162.
[2] The actual basis of the denial of certiorari was lack of jurisdiction.
[1] If, by reason of the manner of his termination and re-entry, a lessor becomes obligated to use good faith efforts to mitigate, those good faith efforts should not be limited to only those damages for rent payments that lessee might be liable for, but any other damages that could in good faith be mitigated.
[2] Fortenberry v. Mandell, 271 So.2d 170 (Fla. 4th DCA 1972).