# Third District Court of Appeal

## State of Florida

Opinion filed July 31, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-1626
Lower Tribunal No. 2018-10345-CA-01
_____


**The Duffner Family 2012 Irrevocable Trust,**
Appellant,

vs.

**The Lee R. Duffner Revocable Living Trust, et al.,**
Appellees.



An Appeal from the Circuit Court for Miami-Dade County, Peter R. Lopez, Judge.

Shendell & Associates, P.A., and Lawrence A. Shendell (Deerfield Beach), for appellant.

Friedman & Frost, P.L., Paul D. Friedman, and Rebecca F. Holljes, for appellee S. Patrick Dray as the Personal Representative of the Estate of Lee Roy Duffner.


Before FERNANDEZ, MILLER, and BOKOR, JJ.

MILLER, J.

Appellant, the Duffner Family 2012 Irrevocable Trust (the "Family Trust"), the former landlord, challenges a final judgment rendered in favor of appellee, S. Patrick Dray as the Personal Representative of the Estate of Dr. Lee Duffner (the "Estate"), the successor in interest to the tenant, following a non-jury trial. The primary issue on appeal is whether the trial court properly limited the remedies available to the Family Trust. Discerning no error, we affirm.

## BACKGROUND

In the late 1970s, Dr. Lee R. Duffner, a prominent physician, and his wife, Alvina Duffner, purchased an oceanfront single-family dwelling in Golden Beach, Florida. They raised their three daughters, Fay Duffner, Tamar Duffner Shendell, and Rachel Duffner-Dwyer, in the home.

After the children reached the age of majority, Alvina fell ill with Alzheimer's disease. In 2008, the family moved her to a long-term nursing facility. Dr. Duffner, however, continued to reside in the Golden Beach residence.

At the urging of Fay, Dr. Duffner subsequently overhauled his estate plan, signing a series of documents expressly intended to transfer his wealth and avoid adverse tax consequences. He was represented by counsel throughout the process.

2

In late-2012, Dr. Duffner executed several documents, beginning with the Family Trust. The operative document named Dr. Duffner as both grantor and trustee and his daughters as the primary beneficiaries. As the trustee, he expressly retained "the continuing power to deal with all property, real, personal[,] or mixed . . . independently, and without the prior or subsequent approval . . . to make contracts and agreements or agree to any rescission or modification of any contract or agreement; and to renew, extend, modify[,] or waive the time of payment or terms of leases."

Dr. Duffner then signed a deed transferring the title of the Golden Beach property to the Family Trust. After he effectuated the conveyance, Dr. Duffner executed a ninety-nine-year residential lease, identifying the Family Trust as the landlord and himself, his wife, the Lee R. Duffner Revocable Trust, and the Alvina Duffner Revocable Trust, as tenants. The parties' heirs, legal representatives, successors, and assigns were bound by the lease covenants.

Three specific provisions of the lease are relevant. The first, a rent clause, provided, in pertinent part:

> Tenant shall be responsible for paying fair market value rent, determined as of the commencement date, and redetermined as of January 1st of 2014 and of each subsequent year, pursuant to written appraisal by an MAI designated appraiser qualified by knowledge and experience to appraise residential real property similar to the Premises.

The second, a default article, placed the tenant in default in the event it failed to pay an installment of rent, as due. The third, a remedies provision, authorized the Family Trust to pursue two coexisting remedies upon default: (1) termination of the lease; or (2) commencement of eviction proceedings in accord with Florida law.

In 2014, Dr. Duffner filed suit against his daughters in the circuit court seeking to rescind the Family Trust, the residential lease, and a promissory note he had executed during the estate planning process on the contended basis all three documents were the unenforceable product of mistake or undue influence exerted by Fay. Contentious litigation ensued, fracturing the family.

Both Alvina and Dr. Duffner died during the pendency of the lawsuit. The trial court eventually entered judgment for the defendants on the basis that the record failed to yield proof of mistake or undue influence. This court affirmed. See Dray v. Shendell, 271 So. 3d 140 (Fla. 3d DCA 2019).

Meanwhile, the Family Trust sold the Golden Beach residence, and the beneficiaries, the Duffner daughters, divided the proceeds. The Family Trust then filed a claim for unpaid rent for the entire duration of the lease against the Estate in probate court. The personal representative filed an objection,

and the Family Trust filed an independent four-count breach of contract complaint in civil court, seeking ninety-nine years of damages.

The Estate answered and asserted as an affirmative defense that the Family Trust was foreclosed by the lease terms from collecting accrued rent. It then sought summary judgment on the same ground.

The Family Trust opposed the motion, contending the remedies specified in the lease were nonexclusive. It also filed a competing summary judgment motion, seeking a determination as to the validity of the lease and existence of breach.

The trial court limited the scope of damages to the discrete period between the inception of the lease and the death of Dr. Duffner and denied the competing summary judgment motions. On the first day of the non-jury trial, the court, however, determined the Family Trust was constrained to the remedies afforded under the lease. A motion for rehearing proved unsuccessful. The instant appeal ensued.

## STANDARD OF REVIEW

This case implicates issues of contractual and statutory interpretation; hence, we apply a de novo standard of review. See Hammond v. DSY Devs., LLC, 951 So. 2d 985, 988 (Fla. 3d DCA 2007) ("[A] trial court's decision construing a contract presents an issue of law that is subject to the *de novo*

5

standard of review."); see also Giller v. Grossman, 327 So. 3d 391, 393 (Fla. 3d DCA 2021) ("We review de novo a trial court's construction of trust provisions, as well as its interpretation or application of controlling statutes, common law rules, or other legal principles.").

## ANALYSIS

In landlord-tenant disputes, "[i]f there is a lease, . . . its provisions are conclusively controlling, and a court will not substitute its judgment for that of the parties by rewriting that lease." Rodeway Inns of Am. v. Alpaugh, 390 So. 2d 370, 372 (Fla 2d DCA 1980). A lease is a contract, and if the terms are "clear, complete, and unambiguous," they do not "require judicial construction." Jenkins v. Eckerd Corp., 913 So. 2d 43, 50 (Fla. 1st DCA 2005). In such circumstances, the court must give effect to the lease "as written and cannot engage in interpretation or construction as the plain language is the best evidence of the parties' intent." Talbott v. First Bank Fla., FSB, 59 So. 3d 243, 245 (Fla. 4th DCA 2011).

The lease in this case plainly authorizes the landlord to select from two coexisting remedies upon breach, termination of the lease or the commencement of eviction proceedings. It is axiomatic that the Family Trust did not exercise either option during the lifetimes of the elder Duffners. This does not, however, end our analysis.

6

The Family Trust persuasively argues that a lease cannot abridge the rights afforded under the Florida Residential Landlord and Tenant Act (the "Act"). See § 83.40 et seq., Fla. Stat. (2018). To that end, section 83.47, Florida Statutes, declares void and unenforceable any provision in a rental agreement that "purports to waive or preclude the rights, remedies, or requirements . . . or preclude any liability of the landlord to the tenant or of the tenant to the landlord, arising under law." § 83.47(a)–(b), Fla. Stat.

Importantly, the Act "'swept away legal principles which had existed for hundreds of years either through the common law or by statute.'" Olen Props. Corp. v. Moss, 984 So. 2d 558, 559 (Fla. 4th DCA 2008) (quoting James C. Hauser, Florida Residential Landlord Tenant Manual 1-1 (2007)). In this regard, the "choice of remedies upon breach or early termination by tenant" are closely circumscribed by section 83.595, Florida Statutes. The statute provides, in pertinent part:

> If the tenant breaches the rental agreement for the dwelling unit and the landlord has obtained a writ of possession, or the tenant has surrendered possession of the dwelling unit to the landlord, or the tenant has abandoned the dwelling unit, the landlord may:
>
> (1) Treat the rental agreement as terminated and retake possession for his or her own account, thereby terminating any further liability of the tenant;
>
> (2) Retake possession of the dwelling unit for the account of the tenant, holding the tenant liable for the difference between the rent stipulated to be paid under the rental agreement and what[,

7

in good faith,] the landlord is able to recover from a reletting . . .;
[or]

(3) Stand by and do nothing, holding the lessee liable for the rent as it comes due.

§ 83.595, Fla. Stat.[1]

The Family Trust further contends it properly exercised the third option in this case. We are not so persuaded. Under the common law, it was the prerogative of the landlord to "stand by and do nothing and sue the lessee as each installment of rent mature[d] or for the whole when it bec[ame] due." Geiger Mut. Agency, Inc. v. Wright, 233 So. 2d 444, 447 (Fla. 4th DCA 1970). But section 83.595 displaces the common law in that it "sets out the total universe of choices available to a landlord." Olen Props. Corp., 984 So. 2d at 560.

A close reading of the unambiguous statutory language compels the conclusion that, whether intended or not, in circumstances in which the commencement of eviction proceedings is contemplated, the procurement of a writ of possession is a prerequisite to standing idly by.

---

[1] Harmonizing the choice of remedies with section 83.55 and the lease, we conclude that abandonment, surrender, or procurement of a writ of possession is a prerequisite to suit. See § 83.55, Fla. Stat. ("If either the landlord or the tenant fails to comply with the requirements of the rental agreement or this part, the aggrieved party may recover the damages caused by the noncompliance.").

8

This statutory caveat is entirely consistent with the lease in this case. Here, upon default, the Family Trust had the option of treating the lease as terminated or pursuing eviction. The Family Trust, however, did not seek to obtain a writ of possession, or for that matter, take any legal action, until long after Dr. Duffner died.

It requires little imagination to surmise why not. As conceded during one stage of the proceedings below, any such action would have proved fruitless because, as the trustee of the Family Trust during his lifetime, Dr. Duffner retained the right to "extend, modify[,] or waive the time of payment or terms of leases."[2] This retention of authority is consistent with the very nature of the lease-back transaction. Dr. Duffner's intent, as expressed in the myriad of estate planning documents, was to "postpone or minimize the impact of income taxes or death taxes." Hand-in-hand with that goal was the

---

[2] Further, the Family Trust, as landlord, accepted performance of the tenant's obligations under the lease, despite this noncompliance. See § 83.56(5)(a), Fla. Stat. ("If the landlord accepts rent with actual knowledge of a noncompliance by the tenant or accepts performance by the tenant of any other provision of the rental agreement that is at variance with its provisions, or if the tenant pays rent with actual knowledge of a noncompliance by the landlord or accepts performance by the landlord of any other provision of the rental agreement that is at variance with its provisions, the landlord or tenant waives his or her right to terminate the rental agreement or to bring a civil action for that noncompliance, but not for any subsequent or continuing noncompliance.").

9

overarching understanding that he and, to the extent she was able, his wife would occupy the premises for the duration of their lives.

Finally, casting aside any preservation issues, the contention Dr. Duffner abandoned or surrendered the premises is unavailing. It is undisputed he remained in the premises until he passed away in the hospital. Any failure to continually occupy the premises was merely a consequence of his illness and death. This falls short of voluntary relinquishment. See Abandon, Garner's Dictionary of Legal Usage (3d ed. 2011) ("[T]o give up property or some right with the intent of never claiming it again."); Abandon, Black's Law Dictionary (5th ed. 1979) ("To relinquish or give up with intent of never again resuming one's right or interest. . . . It includes the intention, and also the external act by which it is carried into effect."); Surrender, Garner's Dictionary of Legal Usage (3d ed. 2011) ("[I]n the law of leaseholds, it is a *term of art* that denotes 'the termination of a lease, which occurs when a tenant gives up his or her interest to the landlord, followed by delivery of possession of the premises.'") (emphasis in original) (quoting 1 American Law of Property 390 (A.J. Casner ed., 1952)); Surrender, Black's Law Dictionary (5th ed. 1979) ("[T]o show a surrender, a mutual agreement between lessor and lessee that the lease is terminated must be clearly proved."). Accordingly, we affirm the final judgment under review.

10

Affirmed.