## McLENNAN v ROZNIAK
### Case No. M-85-10891-C
County Court, Palm Beach County

November 12, 1985

### APPEARANCES OF COUNSEL

**Anne Desormier, DeSantis, Cook, Gaskill & Silverman, P.A.,** for plaintiffs.

**David A. Gunter** for defendants.

### OPINION OF THE COURT

ROBERT M. GROSS, County Judge.

This case came before the Court for non-jury trial on October 7, 1985. Based on the sworn testimony, documentary evidence received, and written closing arguments of counsel, the Court makes the following evidentiary rulings, findings of fact and conclusions of law.

## ADMISSIBILITY OF DEFENDANT'S DEPOSITION

Defendants were not present at trial. Plaintiffs took Defendant June Rozniak's deposition in June, 1985. During the deposition, Ms. Rozniak stated that she was about to move her residence to New York. At trial, Defendants' attorney indicated that his clients now resided out of state. Plaintiff did not object to the attorney's representation. Defendants then offered Ms. Rozniak's deposition into evidence. Plaintiffs object to the admission of the deposition, contending (1) that Defendant had not laid a sufficient predicate under Florida Rule of Civil Procedure 1.330 and (2) that the deposition constituted inadmissible hearsay. Section 90.801, *et. seq.*, Fla. Stat. (1983).

If a deposition is admissible under Rule 1.330, then the evidentiary rule excluding hearsay does not apply. *Dinter v. Brewer*, 420 So.2d 932, 934 (Fla. 3d DCA 1982). Rule 1.330(a)(3)(B) authorizes a party's use of his own deposition if the court finds that the party is out of state, "unless it appears that the absence of the witness was procured by the party offering the deposition." The party offering the deposition may demonstrate unavailability through statements in the deposition itself, *Colonnades, Inc. v. Vance Baldwin, Inc.*, 318 So.2d 515 (Fla. 4th DCA 1975), or through representations of counsel. *Christopher's, Inc. v. Podolnick* , 458 So.2d 777 (Fla. 4th DCA 1984); *Fishman v. Liberty Associates, Inc.*, 196 So.2d 493, 497 (Fla. 3d DCA 1967). Here, defense counsel's statements, combined with Ms. Rozniak's assertion of an impending move, raise more than a reasonable presumption that Defendants resided out of state at the time of trial. Accordingly, the deposition should be admitted into evidence. *See, Dickson v. Feiner's Organization, Inc.*, 155 So.2d 703, 704 (Fla. 2d DCA 1963).

Plaintiffs contend that Ms. Rozniak's decision not to attend the trial amounted to a "procurement" of her own absence, thereby barring the use of her deposition. This argument is without merit. Rule 1.330(a)(3)(B) contemplates that a party may offer his own deposition if he "is out of State" at the time of trial. It follows that a party's out of state residence is a proper reason for not attending the trial. The Rule's prohibition of the procurement of a witness' absence applies to wrongful conduct such as concealing a witness or inexplicably disappearing from trial. *See, Safeway Insurance Company v. Saxon*, 452 So.2d 60, 61 (Fla. 3d DCA 1984).

## FINDINGS OF FACT

Plaintiffs were the Landlords and Defendants were the Tenants of a single-family home located in Palm Beach, Florida. Plaintiffs claim entitlement to damages because Defendants breached their lease by

wrongfully vacating the premises prior to the expiration of the lease term. Defendants have raised numerous affirmative defenses and have filed a Counterclaim for damages contending that Plaintiffs failed to keep the premises in a good state of repair.

Plaintiff Katharine McLennan inherited the single-family residence at 165 Seaspray, Palm Beach. The residence is a large, older home, containing a total of 10 rooms. Up to the day of trial, the parties to this lawsuit had never met nor spoken with each other. Their communications were by mail, or indirectly through a real estate agent, who. became an unwilling go-between after she received her commission.

Before any lease was signed, Defendants inspected the premises with the real estate agent. A written lease was signed on June 30, 1984. The lease was for a one year term, from July 1, 1984 through June 30, 1985. Rent was payable at a rate of $2,000.00 per month. The lease obligated the lessor to have "buildings, equipment and furnishings" in a good state of repair at the beginning of the tenancy and to keep those items "in good condition during the tenancy."

Defendants moved into the home in the beginning of July, 1984. At the end of July, they indicated that they were "delighted with the house." In August, Plaintiffs learned from the real estate agent that Defendants felt there were problems with the electrical wiring, extermination and air conditioning. Plaintiffs hired an electrician, who completed certain repairs on the home. Similarly, both an exterminator and air conditioning repair man made visits to the house during August and performed services. In the end of August, Defendants wrote the real estate agent a letter indicating their unhappiness with the home and their intention to vacate at the end of September. The real estate agent forwarded this letter to Plaintiffs.

On September 16, Defendants wrote directly to Plaintiffs. This letter again expressed Defendants' unhappiness with the home and their intention to move out no later than the end of October. In response to Defendants' September 16 letter, Plaintiffs wrote back, reaffirming both the lease and Defendants' duty to pay rent.

. . . You are welcome to stay during October as long as you pay the rent. We consider we have a contract until broken. Surely, you realize it is now very late to find a season rental and it will be impossible to make up the losses suffered by your departure. . .

By the middle of October, Plaintiffs had received neither September's nor October's rent. On October 15, Plaintiffs' attorney wrote Defendants a letter which accelerated all outstanding rental payments under the lease ($18,000.00) and demanded payment of this amount or

44

possession of the premises within three days of delivery. Defendants ignored this letter and moved out of the home on October 31 without paying any further rent.

After Defendants vacated, Plaintiffs retained the same real estate agent to find a new tenant. A substitute tenant entered into a new lease on the home with a one year term, running from December 1, 1984 through November 30, 1985. The rent on this new lease was $2,000.00 per month. The new tenants took possession of the home on November 23, 1984 and paid prorated rent of $533.28 for the remainder of that month. Plaintiffs received $2,000.00 a month from December, 1984 through June, 1985.

Plaintiffs are seeking the following items of damages:

1) October, 1985 rent—$2,000.00.

2) Prorated rent for November 1—22, 1985—$1,466.72.

3) $2,550.00 in agents' fees incurred in reletting the property.

## ACTION FOR UNPAID RENT

Defendants did not properly terminate their lease because they failed to give the notice required under Section 83.56, Florida Statutes (1983). That section provides the exclusive method by which a tenant may terminate a rental agreement for a landlord's noncompliance with either lease provisions or Section 83.51(1), Florida Statutes. Because notice provisions under Chapter 83 are strictly construed, *see, e.g..*, *Baker v. Clifford Mathew Inv. Co.*, 128 So. 827 (Fla. 1930), Defendants' informal communications to Plaintiffs did not amount to required notice within the meaning of the statute. Accordingly, Defendants' abandonment of the home at the end of October amounted to a breach of the lease agreement.

When a tenant abandons a lease before the expiration of its term, a landlord may pursue one of several courses of action. First, the landlord may treat the lease as terminated and resume possession of the premises for his own use; second, he may retake possession of the premises for the account of the tenant; or third he may stand by and do nothing and sue the lessee as each installment of rent matures or for the whole when it becomes due. *Kanter v. Safran*, 68 So.2d 553, 556-559 (Fla. 1953); *Jimmy Hall's Morningside, Inc. v. Blackburn & Peck Enterprises, Inc.*, 235 So.2d 344, 345 (Fla. 2d DCA 1970). Which option a landlord has chosen is a question of fact. *Babsdon Company v. Thrifty Parking Company*, 149 So.2d 566 (Fla. 3d DCA 1963); *Katz v. Kenholtz*, 147 So.2d 342, 344 (Fla. 3d DCA 1963).

Based on these principles, Plaintiffs did not acquiesce in Defendants'

desire to terminate the lease, but indicated that they would accept surrender only for the account of the tenants. Where lessors elect to reenter the premises for the lessees' account, the basic measure of damages is the difference between the rental stipulated to be paid under the lease and what, in good faith, the lessor is able to recover from a reletting. *Kanter v. Safran*, 99 So.2d 706, 707 (Fla. 1958). Plaintiffs are therefore entitled to recover that portion of November's rent not covered by the reletting. Defendants' liability for October's rent turns on their occupation of the premises during that month.

None of Defendants' affirmative defenses operate to bar or reduce the recovery of rent. The application of the security deposit as a setoff is inappropriate, since that issue was not raised by the pleadings. Defendants have not established the necessary elements of either a formal waiver or an estoppel. Defendants' failure to comply with the notice provisions of Section 83.56 prevents them from raising Plaintiffs' noncompliance with Chapter 83 and provisions of the lease as a defense to this action for rent. Section 83.60(1), Fla. Stat. (1983). Although retaliatory conduct is a defense to an action by a landlord seeking to recover unpaid rent (Section 83.60(1), Fla. Stat. (1983)), Defendants have not demonstrated that Plaintiffs have brought this action primarily for the purpose of retaliating against Defendants. Setting notice problems aside, Defendants have not shown that the premises were uninhabitable to that degree necessary to claim a constructive eviction. *See, Masser v. London Operating Co.*, 145 So. 79, 83 (Fla. 1932); *Sentry Water Systems, Inc. v. ADCA Corp.*, 355 So.2d 1255 (Fla. 2d DCA 1978).

Finally, Defendants contend that they should receive the benefit of the additional five months' rent received under the lease with the new tenant. However, Defendants' entitlement to a credit for the reletting is limited to the lease term itself. A tenant would have no right to sublet or assign for a term beyond that which is reserved in the lease. Similarly, the landlord who has resumed possession for the tenant's account is responsible to the tenant only for rental periods during the lease term, and not thereafter. *Kanter v. Safran*, 68 So. 2d at 558; *Babsdon Company v. Thrifty Parking Company*, 149 So.2d at 569; Restatement (Second) Property, Landlord and Tenant, Section 12.1 (1977).

## *REAL ESTATE AGENTS' FEES*

In their Complaint, Plaintiffs did not specially plead their entitlement to recover fees paid to real estate agents who located new tenants. Defendants contend that such commissions are items of special dam-

ages and that the failure to specially plead for them renders evidence of them inadmissible at trial. *Bialkowicz v. Pan American Condominium No. 3, Inc.*, 215 So. 2d 767, 770 (Fla. 3d DCA 1968). Special damages are "considered to be the natural but not necessary result of an alleged wrong or breach of contract." *Augustine v. Southern Bell Telephone and Telegraph Company*, 91 So.2d 320, 323 (Fla. 1956). General damages are those which follow by implication of law from a breach of contract. *Id.* Where a lessee abandons property and the lessor retakes possession for his tenant's account, the lessor must act in good faith to mitigate his damages by reletting the property. The law presumes that the lessor will incur expenses in so mitigating. *See, Kanter v. Safran*, 68 So.2d at 558; *Babsdon Company v. Thrifty Parking Company*, 149 So.2d at 569. Those cases discussing such recoverable damages characterize reletting expenses as a category of damages separate and apart from special damages. *Id.* In this case, Defendants knew that Plaintiffs were absentee landlords who relied on agents to secure tenants. An agent had secured Defendants' tenancy. Defendants knew that Plaintiffs would use an agent to find substitute tenants were Defendants to abandon the premises. Defendants even requested the agent's help in locating a tenant to take over the lease. Under these circumstances, the agent's fees are best characterized as general damages—the natural and necessary result of the breach of this lease. Thus, the failure to specify a claim for these damages in the complaint does not prevent their proof and recovery.

However, Plaintiffs' recovery of these expenses should be limited to that amount reasonably necessary to obtain a tenant for the remainder of Defendants' lease term. Therefore, Plaintiffs may not recover that portion of the agents' fee allocable to the five additional months of the lease ($1,000.00).

## DEFENDANTS' COUNTERCLAIM

On their counterclaim, Defendants have failed to carry their burden of proof that Plaintiffs violated the lease agreement. Considering the age of the home and the efforts made by Plaintiffs to effect repairs, Defendants have not shown that Plaintiffs violated either the provisions of the lease or of Chapter 83, Florida Statutes. Based on the foregoing, it is

ORDERED AND ADJUDGED that Plaintiffs, John McLennan and Katharine McLennan recover from Defendants Ronald W. Rozniak and June M. Rozniak the sum of $5,000.00 in damages, with interest at 125% per annum, for which let execution issue. The Court reserves jurisdiction over this cause for the purpose of assessing costs, interest, and attorney's fees.